JOSIAH PARSONS & others *vs.* CITY OF NORTHAMPTON.

Hampshire.    September 15, 1891. — September 22, 1891.

Present: ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*County Commissioners — Crossing of Way by Railroad — Separation of Grade — Sharing of Expense by City — Petition in Equity by Tax-payers.*

A city will not be enjoined, upon the petition of ten tax-payers under the Pub. Sts. c. 27, § 129, from paying its share of the expense of abolishing a level crossing therein of a street and railroad, upon due proceedings had under the operation of which important rights have accrued, because the opinion of the mayor and aldermen as to the necessity thereof, transmitted to the county commissioners as required by the Pub. Sts. c. 112, § 129, was not expressed by formal vote or evidenced by record; such an objection, if sound, should be taken before the county commissioners at the beginning of the proceedings, and if taken for the first time upon such a petition comes too late.

The Pub. Sts. c. 27, § 129, authorizing petitions in equity by ten tax-payers of a city or town to prevent the illegal expenditure of money, are not intended to afford means of testing, by proceedings purely collateral, questions affecting the validity of the findings or decrees of other tribunals.

Tax-payers in a city, who have no particular interest in a schoolhouse lot therein taken in separating the grade, at a crossing of a street and a railroad, cannot maintain a petition under the Pub. Sts. c. 27, § 129, to prevent the payment by the city of its share of the expense of such separation, upon the ground of a want of authority in the county commissioners, even if the commissioners could not lawfully take any part of the lot for the purpose of abolishing the crossing.

A petition by ten tax-payers, under the Pub. Sts. c. 27, § 129, to prevent a city from paying its share of the expense of separating the grades of a railroad and a street at a crossing, which is filed immediately after a vote by the city council to raise the money, but more than a year after the order of county commissioners prescribing the work and an award fixing the city's share of the expense were made, cannot be maintained where the crossing is located near the centre of the city, and the railroad company has already incurred large expense in prosecuting the work.

PETITION IN EQUITY, under the Pub. Sts. c. 27, § 129, by ten taxable inhabitants of the city of Northampton, to restrain the city from paying any part of the expense of abolishing the crossing at grade of South Street in that city by the New York, New Haven, and Hartford Railroad. The case was heard by *Knowlton*, J., who reserved it for the consideration of the full court. The facts appear in the opinion.

*C. G. Delano*, for the petitioners.

*R. W. Irwin*, for the city of Northampton.

*J. C. Hammond*, for the railroad company.

BARKER, J.   This petition of ten tax-payers, brought under the provisions of the Pub. Sts. c. 27, § 129, asks us to enjoin the city of Northampton from defraying any part of the expenses of the separation of the grades of the railroad and the street at the South Street crossing.   The alterations which at the time of the filing of the petition were in process of construction, under a decree of the Superior Court, have been adjudged necessary, and ordered by the county commissioners, on proceedings under the provisions of the Pub. Sts. c. 112, § 129, of which they assumed and exercised jurisdiction upon an expression of opinion and petition purporting to be made by the mayor and aldermen.   It is now contended that the payment of any part of the expenses of these alterations by the city would be an abuse of its powers, because public school property has been taken by the proceedings, and because the county commissioners assumed and exercised jurisdiction in consequence of the opinion of the mayor and aldermen that an alteration of the crossing was necessary, while in fact that board had never in regular session passed a vote or taken any action with reference to the subject, and there is no record of such action.

The power of the commissioners was considered by this court in the case of *Davis* v. *County Commissioners,* 153 Mass. 218, a petition for certiorari brought by citizens and tax-payers who owned lands upon that portion of South Street discontinued by the alterations.   The objections there urged were overruled. But these petitioners aver that they were none of them parties or privies in estate or intent to the decree of the commissioners, and were not entitled to bring a petition for a writ of certiorari to quash the same, and also that on December 29, 1890, the mayor and aldermen have instituted, under the St. of 1890, c. 428, other proceedings for the separation of the grades of South Street and the railroad at the same crossing.   The petition for certiorari was filed on May 21, 1890, and dismissed on February 25, 1891.   The award of the special commission was confirmed by the Superior Court on June 4, 1890.   The St. of 1890, c. 428, which placed upon the State a proportion of the expense of the separation of grades in cases thereafter commenced, took effect on June 21, 1890.   The work of constructing the alterations at the crossing was commenced about March 15,

1891, and was prosecuted continuously and in good faith by the railroad company. The present petition was not filed until June 20, 1891, at which time $15,000 had been expended.

The report of the single justice finds that the location of the bridge over the railroad and its approaches is a reasonable and suitable one, and that the school lot is not materially injured for school purposes, and that its market value is but little diminished. The city has never objected to the taking of the school lot, nor made any claim for damages, while the only heir of the grantor of that portion of the lot taken has released all right in it, and does not object to the taking. The rapid growth of the city and the great increase of traffic upon the railroad are matters of common knowledge. The protection of the lives and property of the general public from the dangers incident to level crossings has long been recognized as an imperative necessity; and the purpose of the Legislature to do away with such crossings so far as possible is, as was said in *Davis* v. *County Commissioners, ubi supra,* obvious.

The facts required to give the county commissioners jurisdiction are, by the Pub. Sts. c. 112, § 129, that there shall be a crossing, and that either the mayor and aldermen of the city or the selectmen of the town in which the crossing is, or the directors of the railroad corporation, shall be " of the opinion that it is necessary for the security or convenience of the public that an alteration should be made." Neither the mayor and aldermen, selectmen, nor directors make an adjudication of the necessity, which is to be determined by the commissioners; and the statute prescribes no mode in which the opinion of the mayor and aldermen, selectmen, or directors shall be arrived at or communicated. In the present instance, the mayor and aldermen signed and presented to the commissioners a written petition, stating the existence of the crossing, and that they were of the opinion that an alteration was necessary for the security and convenience of the public, and asking the commissioners to adjudicate upon the necessity, and to prescribe the manner and limits within which the alteration should be made. No objection to the sufficiency of this expression of opinion was raised before the county commissioners, or in the Superior Court. The difference between such an expression and a vote passed in a regular session and certi-

fied and recorded, when the opinion held and expressed is not in itself an adjudication, but is merely the foundation for proceedings by some other tribunal, is not one which tends in any way to affect the decision to be arrived at, or to prejudice the rights of any party to the question to be tried. The objection that the opinion was not expressed by vote, and is not evidenced by record, even if sound, — a point upon which we express no opinion, — ought to have been taken before the county commissioners and at the beginning of the proceedings. It is not of such a nature as to require us to decide in a collateral proceeding that the payment of money by the city in accordance with a decree of the Superior Court founded upon the adjudication of the commissioners, and under the operation of which important rights have accrued, is illegal, and ought to be enjoined.

The taking of a portion of a schoolhouse lot for one of the approaches, even if void for want of authority in the commissioners, would not make their whole decree illegal, or the expenditure of money for carrying their order into effect void, so far as it was authorized by law. The petitioners have no title to the lot, and with respect to it are not the conservators of the rights either of the city or of the heirs of the original grantor. Having no particular interest in it, they have no equity to maintain this petition upon the ground of a want of authority, even if the commissioners could not lawfully take any part of the lot for the purposes of the crossing.

The statute provisions authorizing such petitions as the present were not intended to afford the means of testing, by proceedings purely collateral, questions affecting the validity of the findings or decrees of other tribunals. As was said by Morton, C. J., in *Prince* v. *Boston*, 148 Mass. 285, 288 : " It has never been held that the statute gives an absolute right to any ten tax-payers to maintain a bill in equity, whenever a city or town has voted to pay money from its treasury for a purpose which is not legal. It gives the court jurisdiction to hear and determine the matter in equity, and it has been held that the court will not grant relief where the plaintiffs have been guilty of laches by delaying to bring their suit until the rights of other persons have been affected by the action of the town."

These principles would make it inequitable to grant the prayer

. of the present petition. The vote instructing the finance committee to raise money was passed on June 15, 1891, and this petition made immediately thereafter. But the proceedings under which the expenditure was incurred had been long pending, were public in their nature, and of general interest. The order of the county commissioners prescribing the work was made on April 1, 1890, and the award apportioning a part of the expense to be paid by the city was confirmed in the Superior Court on June 4, 1890 ; it was then apparent that the city would be called upon to make payment of its share of the expense. The location of the crossing was near the centre of the city, and the fact that the railroad company commenced work upon the alterations in March, 1891, and had since been incurring large expense in its prosecution, must be presumed to have been within the knowledge of the petitioners and of their fellow citizens generally. After all parties to the proceedings before the county commissioners and in the Superior Court, including the city whose interests the statute authorizing such petitions as the present was intended to protect, have permitted all this to occur without interposing the objections now urged, it would be most inequitable to allow the petitioners to obtain from this court a declaration which, by incidentally holding void the proceedings of other tribunals, would delay indefinitely the completion of a work of which all parties acknowledge the necessity, and which would lead to great confusion as to the rights of all concerned.

*Petition dismissed.*