JOHN D. LYNCH & others vs. CITY OF CAMBRIDGE & others.

Middlesex. May 8, 1953. — June 12, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Equity Jurisdiction*, Taxable inhabitants' suit. *Municipal Corporations*,
Contracts, Use of municipal property. *Words*, "Incur obligations."

A city, merely by entering into an agreement with a gas company whereby
the city would grant an easement to the company to lay and main-
tain a pipe line for the transmission of natural gas across or under a
reservoir owned by the city and would receive an annual payment
therefor, but no expenditure of money by the city would be involved,
would not "incur obligations" within the purview of G. L. (Ter. Ed.)
c. 40, § 53, and a taxpayers' suit did not lie thereunder to enjoin the
city from executing and delivering the agreement.

PETITION, filed in the Superior Court on July 18, 1952.
The suit was heard by *Smith*, J., upon a master's report.

*James P. Brennan*, (*Michael A. Molloy* with him,) for the
petitioners.

*Henry M. Leen*, (*Harold B. Dondis* & *Thomas E. Goode*
with him,) for the respondent Algonquin Gas Transmission
Company.

No argument nor brief for the City of Cambridge and
others.

COUNIHAN, J. This is a taxpayers' suit under G. L. (Ter.
Ed.) c. 40, § 53.[1] It was brought upon a petition of more
than ten taxable inhabitants of the city of Cambridge, here-
inafter called the city, against the city, its city council, its
city manager, and the Algonquin Gas Transmission Com-

---

[1] "If a town or any of its officers or agents are about to raise or expend
money or incur obligations purporting to bind said town for any purpose or
object or in any manner other than that for and in which such town has the
legal and constitutional right and power to raise or expend money or incur
obligations, the supreme judicial or superior court may, upon the petition of
not less than ten taxable inhabitants of the town, determine the same in
equity, and may, before the final determination of the cause, restrain the
unlawful exercise or abuse of such corporate power."

pany, hereinafter called Algonquin, to enjoin the city, acting through its municipal officers, from executing and delivering to Algonquin an agreement for an easement to lay a pipe line across or under the Stony Brook water basin or reservoir, owned by the city, for the purpose of transmitting natural gas, and to enjoin Algonquin from constructing said pipe line.

The suit was referred to a master to whose report there were no exceptions. On motion the master's report was confirmed and a final decree was entered dismissing the petition. The suit comes here upon an appeal by the petitioners from the final decree. There was no error.

In his report the master reserved two questions of law for the court. Because of the entry of the final decree we assume that the judge passed upon these questions of law although nothing appears in the record to this effect. Because of the conclusions we arrive at, we consider only the second question of law reserved which was stated to be, "If Cambridge does not possess such right and power [to grant the easement to Algonquin], are the petitioners entitled to equitable relief under G. L. c. 40, § 53?"

The master found and it is conceded that the land for the Stony Brook reservoir was acquired and the reservoir was built under St. 1884, c. 256, entitled "An Act to provide a further supply of water for the city of Cambridge." Stony Brook reservoir is located partly in the town of Weston and partly in the city of Waltham. The master also found and it is conceded that a written agreement for an easement to Algonquin for the purposes hereinafter described was authorized by requisite vote of the city council and was about to be executed and delivered by the city manager to Algonquin when this petition was brought. By agreement of counsel nothing was to be done in these respects pending the outcome of this suit.

In substance the master found and it is conceded that the agreement provides that the city grants Algonquin an easement to lay pipes across or under the Stony Brook reservoir in a specified place as shown on a plan attached

and to maintain said pipe line for an indefinite length of
time for the purpose of transmitting natural gas through
this pipe line and other lines to a plant in Everett. Algon-
quin is to pay the city the sum of $500 a year while it main-
tains and uses such pipe line. Each party reserves the right
to revoke and cancel the agreement upon twelve months'
written notice to the other. Algonquin agrees to furnish
the city with a performance bond in the amount of $25,000,
and with a certificate, prior to the commencement of opera-
tions, that it has in effect a public liability insurance policy
in the amount of $250,000 covering damage to persons or
property caused by the use of the pipe line.

The master made a clear and complete report in which he
specifically found that "No evidence was presented to me
tending to show that the petitioners or any of them will or
may sustain any pecuniary loss if the easement-agreement
should be executed and delivered by Cambridge. I find and
rule that on this issue the petitioners have not sustained the
burden of proof." If this finding means, as we think it
does, that none of the taxpayers will suffer any pecuniary
loss because the city is to expend no money on account of
the easement agreement, then in the view we take of this
suit this finding is decisive and we therefore do not consider
any other findings of the master or any other provisions of
the agreement.

The petitioners strongly urge upon us that this suit lies
because the city is about to enter into an illegal obligation
by granting this easement to Algonquin and for this reason
c. 40, § 53, warrants the injunction prayed for. This con-
tention is untenable.

We think that the words of the statute "incur obligations"
have reference to the assumption by the municipality of
burdens of some sort which must be met in the future. Or-
dinarily such burdens would be of a financial character, but
it is not necessary now to say that they must always be so.
In this case the only obligation assumed by the city will be
the obligation to recognize that it has granted an easement
which so far as appears will cause it no present or future

loss or detriment. It is apparent here from the terms of the agreement that the city is not required to raise, expend, or borrow any money. On the contrary it is to receive money for the easement while it is in effect. No obligation of the city under the easement agreement comes within the purview of § 53.

An examination of the long line of cases in which this statute has been considered discloses that, in order to take advantage of the statute, aggrieved taxpayers must show that some illegal expenditures are contemplated by the city. This principle has been so firmly established that we need cite but few cases. In *Dealtry* v. *Selectmen of Watertown,* 279 Mass. 22, at page 27, it was said, "The general aim of . . . [this section] has been said to be to furnish a prompt and effective remedy to restrain cities and towns from raising, borrowing or expending money for purposes not authorized by law." In *Amory* v. *Assessors of Boston,* 310 Mass. 199, at page 202, it was also said, "The statute upon which the petition is based was enacted to prevent the expenditure of municipal funds for an illegal purpose and to prohibit the raising of money by taxation in any manner not authorized by law." Probably the last word on this subject was said in *East Side Construction Co. Inc.* v. *Adams,* 329 Mass. 347, at pages 351–352, "The words [of c. 40, § 53] are that a petition will lie where a town is about to expend money 'in any manner other than that for and in which such town has the legal and constitutional right and power to raise or expend money or incur obligations.' . . . The Legislature obviously intended that this remedy for checking illegal expenditures should be effective at once upon a showing of unlawfulness . . . ." See *Sears* v. *Treasurer & Receiver General,* 327 Mass. 310, 316, 319; *Lowell* v. *Boston,* 322 Mass. 709, 733–734.

It follows therefore that the decree dismissing the petition was right.

*Decree affirmed.*