DERTAD K. OMARTIAN & others[1] *vs.* MAYOR OF SPRING-
FIELD & others.[2]

Hampden.   May 7, 1968. — June 5, 1968.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Eminent Domain,* Validity of taking, Purpose of taking, Motive for tak-
ing, Determination of property to be taken, Appropriation for taking.
*Contract,* Validity, With municipality.   *Municipal Corporations,* Prop-
erty.

Allegations of the bill in a taxable inhabitants' suit under G. L. c. 40,
§ 53, to restrain public officials of a city from carrying out the con-
struction of a highway did not state facts showing that the taking of
land therefor was invalid in that the city took "more land than it
needs," or that the taking was primarily for the private benefit of a
developer of a shopping center who owned a large tract of land con-
tiguous to the land taken, or that a proposed contract between him
and the city whereby he would contribute substantially to the cost of
the highway project was not in the public interest, and a demurrer to
the bill was properly sustained.   [441–442]
A demurrer was properly sustained to the bill in a taxable inhabitants'
suit under G. L. c. 40, § 53, alleging a prospective violation of c. 44,
§ 31, with respect to takings of land in connection with a highway
project in a city but not showing that appropriations or other funds
were not available in an amount sufficient to meet all damages aris-
ing from the takings, and alleging a proposed contract between the
city and a developer of a shopping center who owned a large tract of
land contiguous to the land taken but not showing what the whole pro-
posed contract with him would be or what obligations the city would
incur under it or any facts stating grounds for equitable relief with
regard thereto.   [442–443]
In a taxpayers' suit under G. L. c. 40, § 53, to restrain city officials from
carrying out a highway project, allegations in the bill concerning
school land purportedly "taken" by the city council and the rela-
tion of that land to the highway project were indefinite and did not
adequately state any basis for equitable relief.   [443–444]

[1] The plaintiffs allege that they are all taxable inhabitants of Springfield.
They include all the plaintiffs in *Poremba* v. *Springfield, ante,* 432, except
Marjorie F. Dunning.

[2] The defendants are the mayor, the city treasurer, the city clerk, the
superintendent of streets and engineering, and Michael W. Albano.   A final
decree, from which no appeal was taken, dismissed the bill as to Albano.

BILL IN EQUITY filed in the Superior Court on November 21, 1966.

A demurrer to the bill was heard by *Brogna,* J.

*S. Thomas Martinelli (Kent B. Smith* with him) for the plaintiffs.

*Troy T. Murray,* Associate City Solicitor, for the Mayor of Springfield & others.

CUTTER, J. This taxpayers' suit under G. L. c. 40, § 53, seeks to restrain the defendants from taking steps to carry out the construction of the outer belt highway, referred to in *Poremba* v. *Springfield, ante,* 432. A demurrer by the city officials named as defendants asserted that (a) the bill failed to state facts sufficient to justify equitable relief or any relief against any defendant; (b) that various allegations were vague; and (c) that Albano (fn. 1) had been improperly joined as a defendant. The plaintiffs appealed from an interlocutory decree sustaining the demurrer and from a final decree dismissing the bill as against the city officials.

The plaintiffs, partly on information and belief, made the following allegations. In 1957, Albano (fn. 2) appeared before the Springfield planning board and outlined a plan for a "[s]hopping [p]laza" at Allen and Cooley streets. In 1958, he represented to the city council that there had been expressions of interest in the area by several nationally known firms. In 1959 a zoning amendment affecting thirty acres of land in the area was passed by the city council. At the end of 1959 and in 1963 further zoning amendments affecting fifteen acres (contiguous to the first thirty acres) and twenty acres, respectively, were adopted. In 1964, Albano announced that construction of a shopping center would begin in 1965 and outlined his expectations for obtaining important tenants, "if the route for the proposed [o]uter [b]elt is announced." In 1964 also, the mayor at a city council meeting "announced that a road construction program would be undertaken and tied into the Albano [s]hopping [c]enter . . . . The plan . . . called for extending the dual highway on Allen Street . . . to Cooley Street . . . and the widening

of Cooley and Parker Streets from Allen Street to Boston Road. . . . Albano indicated that he would donate that portion of the dual highway . . . on his land." The mayor stated that Albano would "pay half" the cost of the road for the shopping center.

On April 14, 1965, the city made a contract for preliminary design plans, and Albano (so it is alleged on information and belief) paid $40,000 for these, which were closely similar to plans filed by Albano in the registry of deeds. At this time the location of the outer belt highway was not known and State public works officials were uncertain whether it would ever be built in that area. At a hearing in March, 1966, on the proposed highway development before the city's board of public works the cost of the project was estimated at $497,000 of which Albano would pay $250,000. One defendant then testified that $60,000 had been set aside for land damages for thirty acres. On April 4, 1966, the mayor stated that the project "would be part of the [o]uter [b]elt [h]ighway that had been talked about for years." Statements somewhat contradicting the mayor were later made by State officials. An amount of $250,000 from a bond issue was diverted to other projects. The order of taking was passed October 17, 1966, and later recorded. This order and the plan, so the bill alleges, show that more land was taken than was necessary. Various procedural defects are alleged which, so far as argued before us, are mentioned below.

1. The plaintiffs first argue that the taking was invalid as excessive, in that the city "takes rather obviously more land than it needs, so that Albano can ultimately get the excess, which he could not purchase from its owners." For this contention reliance is placed on a plan (attached to the bill) which is unexplained by specific allegations. The bill does state, but only in general terms, that parcels nos. 10, 12, and 13 "were clearly not needed for the highway taking" and "were taken at the request and for the benefit of . . . Albano in partial consideration for his promise to pay $260,000 toward the project's cost "and were not required

by common convenience and necessity." The plan shows that approximate slope limits of the proposed highway invade parcels nos. 10 and 12. There is no indication on the plan that parcel no. 13 is within the proposed highway or slope limits. The plan, however, does not exclude the possibility that this parcel may be needed for some highway purpose. There is no explicit allegation that parcel no. 13 is to be disposed of to Albano. At least in the absence of more specific allegations that improper use of any of the land taken is proposed, the matter falls within the cases cited in the *Poremba* case, *ante*, 432, holding that a "wide discretion is entrusted to officials charged with responsibility to determine what land is essential to a public improvement."

It is a general principle that private property cannot be seized ostensibly for a public use and then diverted to a wholly private use. See *Sellors* v. *Concord*, 329 Mass. 259, 261–262.[3] Even applying this principle, however, the allegations of the present bill do not specifically assert facts which, if proved, would establish that this taking is primarily for Albano's private benefit. It also is not improper for a body making an eminent domain taking to make a reasonable business contract in the public interest in anticipation of, or because of, the effects of that taking. See *Robie* v. *Massachusetts Turnpike Authy.* 347 Mass. 715, 725–729. No facts have been alleged which sufficiently show that the proposed contract with Albano, by which the city would obtain a substantial contribution by Albano to the cost of the project, was not in the public interest.

2. It is alleged that there is a prospective violation of G. L. c. 44, § 31 (as amended through St. 1955, c. 259), in that the city is about to incur a liability in excess of appropriations. Although the bill refers to a project which as a

---

[3] A public purpose, of course, may be such as to require or permit a taking, in the public interest, which may eventually lead to use of a part of the land taken for a private activity as an appropriate part of carrying out the underlying public purpose, as, for example, in urban redevelopment. See authorities referred to in *Opinion of the Justices*, 341 Mass. 760, 776–780; see also *Village on the Hill, Inc.* v. *Massachusetts Turnpike Authy.* 348 Mass. 107, 115; *Moskow* v. *Boston Redevelopment Authy.* 349 Mass. 553, 562–563; cf. *Opinion of the Justices*, 204 Mass. 607, 612–615.

whole will cost $497,000, it contains no allegation that taking the particular parcels already mentioned will cost any such sum or that appropriations or other funds are not available in an amount sufficient to meet all damages arising from the taking. See *Harrington* v. *Worcester,* 345 Mass. 166, 168.

There is a general allegation that the mayor "will sign the contract with . . . Albano as soon as it passes the [c]ity [c]ouncil; that once he does, the [c]ity is bound to accept from . . . Albano by the . . . contract . . . [$100,000] when the agreement is signed . . . [$100,000] within ten . . . days after the contract for the construction of said highway is awarded by the [c]ity, and . . . [$60,000] upon successful completion of the work; [and] that an inadequate amount of money has been appropriated . . . for the estimated cost of said [o]uter [b]elt [h]ighway." These allegations do not show what the whole proposed contract with Albano is or what obligations the city will incur under it. Only a few of the contract provisions are vaguely mentioned.

The allegations indicate that the proposed contract has not yet been authorized by the city council. They insufficiently show any such immediate prospect of an illegal expenditure under an effective contract, which is said to be illegal, as would justify relief under G. L. c. 40, § 53. See *Fuller* v. *Trustees of Deerfield Academy,* 252 Mass. 258, 260; *Amory* v. *Assessors of Boston,* 310 Mass. 199, 205. See also *Lynch* v. *Cambridge,* 330 Mass. 308; *North* v. *City Council of Brockton,* 341 Mass. 483, 484. Even if it be true, as suggested in the plaintiffs' brief, that the city has executed the Albano contract, received $260,000 from him, and let a construction contract, no allegations of this bill sufficiently show the facts concerning these matters to state grounds for equitable relief. Compare *East Side Constr. Co. Inc.* v. *Adams,* 329 Mass. 347, 349–353, where the facts alleged in the bill, if established, would have shown a clearly illegal contract under which further expenditures still might be possible.

3. The plaintiffs allege that five acres of land subject to

the control of the Springfield school committee have been "taken" without following the appropriate statutory procedure and without obtaining the permission of the school committee either before or after the action of the city council. See G. L. c. 40, § 15A (as amended through St. 1954, c. 105), c. 43, § 33. There is no allegation of any complaint by the school committee about the council's action, or that the plaintiffs have any special interest in the school land. See *Parsons* v. *Northampton,* 154 Mass. 410, 413. See also *Amory* v. *Assessors of Boston,* 310 Mass. 199, 201, 203–204. Consent of the school committee, even after the council action, would cure any failure to comply with the statutes just cited. See *Bouchard* v. *Haverhill,* 342 Mass. 1, 4. We assume that the city "officials will diligently proceed to do whatever is necessary to effectuate the objects for which the land was taken" (see *Sellors* v. *Concord,* 329 Mass. 259, 262) and proceed to obtain any necessary school committee consent before using school land. In any event, the indefinite allegations concerning (a) the school land (the location of which is not stated) and (b) its relation to the highway project do not adequately state any basis for equitable relief.

4. Other issues either have not been sufficiently argued or require no discussion.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs of appeal.*