Moses, Richard T., J.
This action was filed on October 22, 2010 by ten taxpayers pursuant to M.G.L.c. 40, §53, seeking to enjoin the Fall River Redevelopment Authority (the “FRRA”) from transferring certain real estate situated in the city of Fall River (the “Premises”) which consists of a three hundred (300) acre parcel situated in Fall River. The complaint asserts that the subject premises were conveyed to the FRRA pursuant to Chapter 266 of the Acts of2002, an act authorizing certain conveyances of land to establish the Southeastern Massachusetts Bioreserve (the “Bioreserve Act”), and that the Bioreserve Act provides the right to develop land for commercial, industrial and other economic development purposes, but expressly excluding any use for casino/gaming related purposes. The complaint asserts that the proposed sale of the Premises to the Mashpee Wampanoag Tribe (the “Tribe”) would violate the Bioreserve Act and would be contrary to the provisions of M.G.L.c. 30B, §16, which require that the conveyance or other disposition of real property or any interest therein, with a determined value in excess of $25,000.00, shall require a solicitation of proposals in accordance with certain specified procedures. The FRRA appeared in opposition to the subject application for preliminary injunction, providing the court with copies of a document entitled “Purchase and Sale Agreement” and a document entitled “Option Agreement.” Both documents list as parties the FRRA and a Massachusetts corporation known as “Project First Light, Inc.” (“First Light”), which is identified as being owned or controlled by the Mashpee Wampanoag Tribe, a federally recognized tribe. At hearing, it was undisputed by the *537 FRRA that the proposed use of the Premises is for casino gambling.
An opinion was sought from the Office of the Inspector General for the Commonwealth in connection with the proposed sale. A written opinion filed on May 27, 2010 was issued by the Inspector General. In such opinion, the Inspector General quoted the portion of the Bioreserve Act which authorizes certain conveyances of land. The Act states that the Authority:
[M]ay develop said land for commercial, industrial and other economic development purposes, but expressly excluding any use of said land for landfill or casino/gaming related purposes without the necessity of adopting or adhering to an urban renewal plan, as defined in Section 1 of chapter 121 B of the General Laws, and that with respect to said land the Fall River Redevelopment Authority shall enjoy the statutory authority it would possess for land and structures and other property within an urban renewal project as defined by Section 1 of said chapter 12IB.
The letter concluded with the Inspector General opining that “. . . the Act prohibits the development of the land for casino/gaming and landfill related purposes. Also in the opinion of this office, M.G.L.c. 30B, §16 would apply to any disposition of real property or interest therein not in accordance with the purposes and intent of the Act.”
The Premises were conveyed to the FRRA by a “Release Deed” executed on behalf of the Commonwealth which was recorded on March 4, 2009. The Release Deed contains a use restriction which states:
As provided in the Act, Grantee may develop the Premises for commercial, industrial and other economic development purposes, without the necessity of adopting or adhering to an urban renewal plan as defined in Section 1 of Chapter 12 IB of the General Laws, but expressly excluding any use of the Premises for landfill or for casino or other gaming related purposes.
The FRRA argues that because the proposed purchase is subject to the aforesaid restriction and the ultimate release thereof, the proposed transfer is not violative of M.G.L.c. 30B, §16. FRRA further argues that although a transfer of the premises for casino or other gaming related purposes would be violative of the Bioreserve Act, the restriction relating to such activity is likely to be removed by the legislature and that legislation previously presented to the governor, which went unsigned, would have rescinded such language. It is undisputed that the Bioreserve Act remains in tact at this time.
At hearing, it was represented by FRRA that both agreements remained unsigned and that the parties would defer execution of the same pending ruling of the court. It was further represented that the terms thereof had been negotiated and that the documents provided to the court were to be the finally executed documents, although FRRA had yet to receive an appraisal and that an approval was expected to be received by the closing and would be part of the “closing documents.”
The court has reviewed the rather complex Purchase and Sale Agreement and Option Agreement which provides that acquisition financing to the buyer would be provided by virtue of a mortgage to an entity known as Arkana Limited. The Purchase and Sale Agreement, which relates to sixty (60) of the three hundred (300) acres, is conditioned upon the seller entering into an Option Agreement for the remaining two hundred forty (240) acres. The Agreement, provides for certain restrictions relating to assignability by First Light of rights under the Agreement and provides:
... in no event shall Buyer assign or transfer Buyer’s rights under this Agreement, without the express written consent of Seller, to an unaffiliated person or entity that intends to use the Premises for non-gaming purposes. For the avoidance of doubt, Seller and Buyer hereby acknowledge and agree that the Premises shall be conveyed subject to the Deed Restrictions and that Buyer’s use of the Premises shall comply with such Deed Restrictions so long as such Deed Restrictions encumber the Premises.
The Agreement further provides for a complicated formula for repurchase of the Premises by FRRA at the election of the buyer in the event certain contingencies are not met. Finally, the Agreement contains a requirement with respect to good faith negotiation for an Intergovernmental Agreement, so long as the Deed Restrictions have been released and pursuant to which the Tribe and the Ciiy of Fall River shall negotiate in good faith the terms thereof with respect to the Tribe’s intended development and use of the Premises.
A review of the Option Agreement for the purchase of the remaining two hundred forty (240) acres of the Premises, reveals that it is effective until July 31, 2012, with a potential further extension of one (1) year beyond the original termination date. The document further provides that both the seller’s obligations to sell, and the buyer’s obligation to buy, Parcel A-2, the two hundred forty acre (240) parcel, are subject to: (1) repeal or removal of the existing Deed Restrictions prohibiting the use of Parcels A-l and A-2 as a casino; (2) a referendum by residents of the Ciiy of Fall River approving such parcels as a destination resort casino; (3) the buyer’s primary use of the parcel as a destination resort casino and purposes ancillary thereto; and (4) buyer’s execution of a host community Intergovernmental Agreement with the City of Fall River pertaining to such parcels. The Option Agreement provides that upon the exercise of the option, it will become a binding purchase and sale agreement.
*538 DISCUSSION
With litigation involving private parties, the court must consider certain factors when deciding a motion for preliminary injunction. These include: (1) plaintiffs likelihood of success on the merits; (2) the risk of irreparable harm to the plaintiff if the motion is denied; and (3) the irreparable harm to the defendant if the motion is allowed. Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). When a party seeks to enjoin governmental action, a judge is “required to determine that the requested order promotes the public interest, or alternatively, that the equitable relief will not adversely affect the public. Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984).
THE BIORESERVE ACT
The Bioreserve Act authorizes the purchase of certain real estate, which includes the Premises, by the FRRA from the Division of Capital Asset and Management for the Commonwealth. Section 2 states that the FRRA may purchase “. . . notwithstanding Chapter 12 IB of the General Laws, or any other general or special law to the contrary . . .” The Bioreserve Act provides that:
The Fall River Redevelopment Authority may develop said land for commercial, industrial, and other economic development purposes, but expressly excluding any use of said land for landfill or casino/gaming related purposes, without the necessity of adopting or adhering to an urban renewal plan, as defined in Section 1 of chapter 12 IB of the General Laws, and with respect to said land the Fall River Redevelopment Authority shall enj oy the statutory authority it would possess for land and structures and other property within the urban renewal project as defined by Section 1, of said chapter 12 IB. The lack of available industrial land in Fall River and Freetown is detrimental to the economic welfare of the citizens of the Commonwealth and, in particular, the city of Fall River and the town of Freetown. (Emphasis added.)
The Release Deed previously referenced conveyed the Premises pursuant to the Bioreserve Act and with the applicable restrictions. The FRRA first argues that the subject transaction is not violative of the Bioreserve Act because of the above quoted language which provides that the Premises are taken subject to the applicable deed restrictions. This argument is unconvincing in that First Light’s anticipated and disclosed proposed use of the Premises is for casino and gaming related purposes. The court concludes that notwithstanding the contractual language that the purchase is subject to the restrictions, the transaction is contrary to the spirit and intent of the Bioreserve Act. Clearly the option to purchase creates an equitable property interest in the Premises with the intent to ultimately use the same for casino related purposes. Peterson v. Tremain, 35 Mass.App.Ct. 422, 423 (1993), and cases cited. Likewise, the mortgage given to First Light’s mortgagee provides it with legal title to the Premises, with equitable title being with the mortgagor. Maglione v. BancBoston Mortg. Corp., 29 Mass.App.Ct. 88, 90 (1990). The court concludes that the execution of the proposed agreements would be contrary to the intent and language of the statute.
COMPLIANCE WITH M.G.L.c. 30B, §16
The Taxpayers argue that the subject transfer is violative of M.G.L.c. 30B, §16(b)(c). Such section provides in substance that in the event a governmental body is disposing of real estate, it shall determine the value of the same through procedures customarily accepted by the appraising profession and also that the governmental body shall solicit proposals prior to disposing of by sale or rental to any person, real property or any interest therein, determined in accordance with paragraph (b) to exceed $25,000.00 in value. (Emphasis added.)
It is clear that such language on its face would literally apply to the subject transaction in that it involves conveying an interest in real estate which clearly has a value in excess of $25,000.00. The FRRA argues that it is exempt from the aforesaid provisions by virtue of the provisions of M.G.L.c. 30B, §1(25), which exempts “a contract to so lease or acquire residential, institutional, industrial or commercial property by a public or quasi-public economic development agency or urban renewal agency engaged in the development and disposition of said real property in accordance with a plan approved by the appropriate authorizing authority.”
The FRRA argues that because the Bioreserve Act exempts it from the requirement of adopting and adhering to an urban renewal plan that the subject transaction still enjoys the exemption contained in M.G.L.c. 30B, §1(25). The court concludes that their reliance on such statutory language is misplaced in that it must be read in the context of exemption within the Bioreserve Act which was given in connection with sales which specifically exclude a sale for use which would include casino gambling. The court therefore concludes that the subject transaction as structured would be violative of M.G.L.c. 30B, §16.
EFFECT ON THE PUBLIC INTEREST
The court concludes that the issuance of a preliminary injunction does not affect the public interest adversely and, in fact, promotes the public interest. The purpose of M.G.L.c. 30B, §16, is to prevent favoritism and to secure honest methods of letting contracts in the public interest to obtain the most favorable price, and to treat all persons equally. Mangano v. Town of Wilmington, 51 Mass.App.Ct. 857, 859 (2001). At hearing, it was admitted that an appraisal for the subject premises is yet to be obtained and public proposals have not been sought with respect to the subject premises.
*539 Furthermore, the language contained within the Bioreserve Act is compelling. As referenced above, Section 2 thereof provides, in part, “(t]he lack of available industrial land in Fall River and Freetown is detrimental to the economic welfare of the citizens of the Commonwealth and, in particular, the city of Fall River and the town of Freetown.” Barely a year after the subject premises were conveyed to the FRRA, it seeks to transfer the same in contravention to the stated purpose of the Act and in disregard of the stated basis for the subject transfer of the parcel to it.
The FRRA argues that because the potential construction of a casino would help reduce the jobless rate in Fall River that the granting of a preliminary injunction would not be in the public interest. The court cannot ignore the fact that such transfer would be in violation of the above referenced statutes and would also return the city to the detrimental position which the legislature determined had existed and which the Bioreserve Act sought to cure.
ORDER
For the foregoing reasons, it is ORDERED that the defendants, their agents, servants and employees are hereby RESTRAINED and ENJOINED from entering into any agreement relating to the sale of the parcels which are the subject of the within action for the purpose of casino/gaming and related purposes. This order includes, without limitation, the execution of any Purchase and Sale Agreement, Option Agreement, deed or other instrument transferring or agreeing to transfer any interest in the subject real estate for any such purpose.