Moses, Richard T., J.
This matter was previously before the court on the application of the plaintiff, Ten Taxpayer Group (the “Group”), seeking to enjoin the Fall River Redevelopment Authority (the “FRRA”) from transferring certain real estate situated in Fall River claiming that such transfer would be violative of Chapter 266 of the Acts of 2002 (the “Bioreserve Act”) and contrary to the provisions of G.L.c. 30B, §18. After hearing and consideration of the submissions of the parties, the court issued its findings and order for preliminary injunction on October 28, 2010 [27 Mass. L. Rptr. 536]. The court incorporates by reference the background and findings made in such prior order.
On November 4, 2010, the FRRA filed Defendant’s Emergency Motion to Dissolve Preliminary Injunction or, in the Alternative, to (A) Clarify and/or Modify Injunction; and (B) Require Plaintiff to Post Adequate Security. The subject motion is essentially a motion for reconsideration which raises various grounds not previously raised by the FRRA. The only change with respect to the underlying facts is that the FRRA, as seller, and the remaining parties to the subject agreements have deleted language therefrom that conditioned the transaction upon the repeal and removal of existing deed restrictions prohibiting the use of the *260 premises as a casino as well as certain other casino-related restrictions and conditions referenced on page four of this court’s prior decision. The FRRA argues that the purchaser is merely taking the premises subject to all restrictions of record and hence, the transfer is not contrary to the Bioreserve Act. Notwithstanding the elimination of the subject language, the buyer reserves the right to require repurchase of the subject premises by the FRRA at the buyer’s sole discretion.
It is undisputed, notwithstanding the deletion of the aforementioned offending language, that the intended use of the subject premises is casino gambling. The agreement provides for a complicated repurchase arrangement and the disposition of portions of the premises until the repurchase price is paid and incidental to which a mortgage to the premises granted to Arkana Limited would be discharged.[1]
STANDING
The FRRA claims that the group lacks standing to maintain this action under G.L.c. 40, §53, which provides in part:
If a town, regional school district, or a district as defined in Section one A, or any of its officers or agents are about to raise or expend money or incur obligations purporting to bind said town, regional school district, or district for any purpose or object or in any manner other than that for and in which such town, regional school district, or district has the legal and constitutional right and power to raise or expend money or incur obligations, the supreme judicial or superior court may, upon petition of not less than ten taxable inhabitants of the town . . . determine the same in equity, and may, before the final determination of the cause, restrain the unlawful exercise or abuse of such corporate power.
The critical question is whether the FRRA is “about to raise or expend money or incur obligations” purporting to bind it and if so, whether it has the legal and constitutional right and power to raise or expend such funds or incur obligations.
The FRRA argues that the subject transaction merely involves the sale of real estate and does not involve expenditure of funds or the incurring of any immediate obligation.
In reading the cases cited by the parties, the court is unable to find a factual situation directly on point.
General Laws c. 40, §53, is preventative and is neither anticipatory nor retroactive. The aim of the statute is to “furnish a prompt and effective remedy to restrain cities and towns from raising, borrowing or expending money for purposes not authorized by law, and to enable a minority to guard their rights and interest when such unlawful acts were threatened or in contemplation.” Fuller v. Trustees of Deerfield Academy, 252 Mass. 258, 260 (1925), citing Hood v. Mayor & Alderman of Lynn, 1 Allen 103, 104.
. . . there must be allegations of actual vote to raise or to pay money or to pledge credit for an illegal purpose. A well grounded expectation of such conduct is not enough to confer jurisdiction of the statute. Some one of the facts described in the statute is essential as a basis for jurisdiction. The statute does not authorize, on the other hand, the correction of wrongs wholly executed and completed.
Fuller, 252 Mass. at 260. See also Burke v. Gloucester, 358 Mass. 211, 214 (1970).
The FRRA cites Burke for the aforementioned proposition claiming that any obligations to pay money on behalf of FRRA are too speculative and remote. The court notes, however, that in Burke, the court concluded that the city of Gloucester lawfully entered into the subject transaction with a purchase price fixed at $4 million dollars which was within a $5 million dollar limitation provided by statute and that the taxpayers’ argument that such sum would be exceeded was speculative.
In determining whether a department or officer of the Commonwealth is “about to expend money,” the court stated in Sears v. Treasurer & Receiver General, 327 Mass. 310, 318 (1951), “. . . it appears that, if events take their normal course, or if no extraordinary intervention occurs and if there is no restraint by the court, it or he will pay out money or take part in paying it out.” Id. (see also Pratt v. Boston, 396 Mass. 37, 44 (1985)).
The FRRA relies heavily on Lynch v. Cambridge, 330 Mass. 308 (1953), where the city of Cambridge entered into an agreement with a gas company to grant the company an easement to lay and maintain pipe for transmission of natural gas across properly owned by the city and to receive an annual payment for the same. The petitioners in Lynch asserted that they had standing because the city was about to enter into an illegal obligation by granting the subject easement. The court noted that the words, “incur obligations,” refer to the assumption by the municipality of burdens of some sort which must be met in the future and that “ordinarily such burdens would be of a financial character, but it is not necessary now to say that they must always be so. In this case, the only obligation assumed by the city would be the obligation to recognize that it has granted an easement which so far as appears, will cause no present or future loss or detriment.” Id. at 310-11.
The court notes that the transaction at issue in this case goes far beyond a mere transfer of an interest in land in return for the FRRA merely receiving financial compensation. To the contrary, the subject transaction is a complicated arrangement which initially provides for, what is tantamount to a joint venture between the FRRA, First Light, Inc. which is an entity purportedly controlled by the Tribe, and Arkana. The agreement could be characterized as a complicated *261 option agreement providing for up front payments to the FRRA, the placing of a mortgage of $6 million dollars or more on the subject premises and a unilateral right of the buyer to back out of the transaction thereby setting in motion a complicated re-payment plan involving piecemeal sale of the land until there has been full repayment. The obligations of the FRRA under the agreement are clear and precise and are not speculative. The court therefore concludes that the group has standing to maintain this action.[2]
IS THE TRIBE A NECESSARY PARTY
The FRRA claimed that the Tribe is a necessary party. The court notes that the proposed agreements have yet to be executed by any of the parties thereto. As previously referenced, the purpose of G.L.c. 40, §53, is to permit an effective remedy to restrain cities and towns from raising, borrowing or spending money for purposes not authorized by law. Lynch v. Cambridge, supra at 311. The relief in question is directed toward the improper actions of the FRRA. The court concludes that it would be illogical and contrary to public policy to cloak the FRRA with any immunity which the Tribe may enjoy. Of course, this ruling does not preclude the Tribe from seeking to intervene in this action if it deems appropriate.
THE REVISED PURCHASE AND SALE AND OPTION AGREEMENTS
The FRRA argues that the subject purchase and sale agreement and option agreements comport with law and that the use for gaming is speculative.
Notwithstanding the proposed deletion of language from the agreements which specifically referenced casino gambling, it is clear that the intended use remains the same. The revision of the agreements does not cure their primary flaw. The execution thereof would be consistent with an abandonment of the statutorily intended use of the premises, namely the creation of a bioreserve park and prevents the further development of the property for a period of years while the buyer determines whether or not to opt out in the event its intended use cannot be accomplished.
Furthermore, the court declines to order that security be posted pursuant to Mass.R.Civ.P. 65(c). In the present action, the group is acting as a private attorney general to enforce statutory law. LeClair v. Town of Norwell, 430 Mass. 328, 331 (1999). In the present circumstances, the court concludes that the requirement of the posting of a bond is inappropriate.
CONCLUSION
For the foregoing reasons, the defendant’s emergency motion is hereby DENIED.

A bulletin issued by the Mashpee Wampanoag Tribe (the “Tribe") references that the Tribe is forming a new relationship with a major international partner to build a resort-style gaming facility in Southeastern Massachusetts. The new partner is identified as Arkana Limited which is beneficially owned by a trust of which a Malaysian family are the beneficiaries.

Notwithstanding this determination, the court is troubled by disclosures at the subject hearing that the group is comprised of one or more members of a competing tribe (the Pocasset Wampanoag Tribe), a state recognized but not federally recognized tribe. This fact alone however does not deprive the group of standing.