Holtz, Nancy Staffer, J.
The plaintiff, James C. Policastro, brought the above-captioned matter, pursuant to G.L.c. 231A, seeking a declaratory judgment that the Boston Redevelopment Authority’s sale of urban renewal land to the Islamic Society of Boston violated the First Amendment of the United States Constitution and the Massachusetts Anti-Aid Amendment. The defendants, the Boston Redevelopment Authority (“BRA”), Roxbury Community College (“RCC”), and the Islamic Society of Boston along with the Islamic Society of Boston Trust (“ISB”), now move to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(6).[1] As grounds for dismissal, the defendants assert that Policastro has failed to state a claim upon which relief can be granted because he lacks the requisite legal standing to maintain this action.

DISCUSSION

In order to allow a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), a defendant must show “that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977). For these purposes, the factual allegations in a complaint will be treated as true. Id. at 98.

I. G.L.c. 231A Does Not Provide Policastro an Independent Basis for Standing

In his Complaint, Policastro seeks a declaratory judgment pursuant to G.L.c. 231A that the sale of urban renewal land to the ISB was unconstitutional, in violation of the Establishment Clause and the Massachusetts Anti-Aid Amendment.[2] Proceedings pursuant to G.L.c. 231A “are concerned with the resolution of real, not hypothetical, controversies; the declaration issued is intended to have an immediate impact on the rights of the parties.” Bello v. South Shore Hospital, 384 Mass. 770, 778 (1981). Therefore, in order for G.L.c. 231A to be available, Policastro must first demonstrate that an actual controversy exists and that he has legal standing to sue. District Attorney for Suffolk Dist. v. Watson, 381 Mass. 648, 659 (1980). General Laws c. 231A does not provide an *274 independent basis for standing. Enos v. Secretary of Environmental Affairs, 432 Mass. 132, 135 (2000); Pratt v. Boston, 396 Mass. 37, 43 (1985).
The actual controversy requirement may be met if the pleading “sets forth a real dispute caused by the assertion by one party of a legal relation, status, or right in which he has a definite interest.” School Committee of Cambridge v. Superintendent of Schools, 320 Mass. 516, 518 (1946). The standing requirement mandates that the plaintiff has suffered, or is in danger of suffering, legal harm. Pratt, 396 Mass. at 42 (“From an early day it has been an established principle in this Commonwealth that only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duly of passing upon the validity of the acts of [another] branch of the government”). Generally, this harm must fall within the area of concern of the relevant statute or constitutional guarantee. Enos, 432 Mass. at 135; Penal Inst. Commr. for Suffolk Cty. v. Commissioner, 382 Mass. 527, 532 (1981). “(Standing is not measured by the intensity of the litigant’s interest or the fervor of his advocacy.” Pratt, 396 Mass. at 42, quoting Valley Forge Community College v. Americans United for Separation of Church and State, 454 U.S. 464, 486 (1982).
Here, Policastro merely asserts that, in his capacity as a resident taxpayer of Boston, his constitutional rights were violated by the aforementioned sale of land. However, “[pjlaintiffs who are merely residents, voters, taxpayers, or town officials, without any special statutoiy standing, may not use G.L.c. 231A to obtain declaratory relief concerning the validity of an official act.” Chase v. Planning Board of Watertown, 4 Mass.App.Ct. 430, 431 (1976). Consequently, an alternative basis of standing must be found in order for Policastro to survive the Defendants’ Motion to Dismiss.

II. Policastro Fails to Meet the Requirements of “Municipal Taxpayer Standing”

Policastro has asserted standing solely as a municipal taxpayer of the City of Boston. He derives his theory of municipal taxpayer standing from the distinction made by the Supreme Court regarding the differences in rights between federal and municipal taxpayers. See Coleman v. Miller, 307 U.S. 433, 445 (1939); Frothingham v. Mellon, 262 U.S. 447, 486-87 (1923).
While one asserts the mere right of a citizen and taxpayer of the United States to complain of the allegedly invalid outlay of public moneys has no standing to invoke the jurisdiction of the federal courts, the Court has sustained the more immediate and substantial right of a resident taxpayer to invoke the interposition of a court of equity to enjoin an illegal use of moneys by a municipal corporation.
Coleman, 307 U.S. at 445.
This principle has since been modified to allow federal taxpayers standing in cases where a specific expenditure of federal funds by Congress violates the Establishment Clause of the First Amendment. See Valley Forge, 454 U.S. at 479-80 (finding that respondents had no federal taxpayer standing when the source of their complaint was an administrative, rather than a congressional, action authorized under the Property Clause); Flast v. Cohen, 392 U.S. 83, 114 (1968) (“Because that clause plainly prohibits taxing and spending in aid of religion, every taxpayer can claim a personal constitutional right not to be taxed in support of a religious institution”). Still, the Supreme Court has not elaborated upon the exact boundaries of municipal taxpayer standing.
Massachusetts courts, on the other hand, have dealt with taxpayer standing in the following way. Because general equity jurisdiction “to entertain a suit by individual taxpayers to restrain cities and towns from carrying out invalid contracts, and performing other similar wrongful acts” does not exist, a plaintiff must have a statutoiy basis for standing in order to bring such an action. Fuller v. Trustees of Deerfield Academy, 252 Mass. 258, 259 (1925), quoting Steele v. Municipal Signal Co., 160 Mass. 36, 38-39 (1893). General Laws c. 40, §53 sets forth the requirements for taxpayer standing in Massachusetts:
If a town, regional school district, or a district as defined in section one A, or any of its officers or agents are about to iaise or expend money or incur obligations purporting to bind said town, regional school district, or district for any purpose or object or in any manner other than that for and in which such town, regional school district, or district has the legal and constitutional right and power to raise or expend money or incur obligations, the supreme judicial or superior court may, upon petition of not less than ten taxable inhabitants of the town . . . determine the same in equity, and may, before the final determination of the cause, restrain the unlawful exercise or abuse of such corporate power.
The Supreme Judicial Court has consistently held that the remedy provided by G.L.c. 40, §53 is exclusive where the plaintiff does not allege violation of any rights beyond his rights as “a citizen of and a property owner and taxpayer in” the municipality. Butler v. Selectmen of Town of Wakefield, 269 Mass. 585, 587 (1930); see also Dube v. Mayor of Fall River, 308 Mass. 12, 13-14 (1941); Fuller, 252 Mass. at 259. Thus, in order for Policastro to bring a claim solely as a taxpayer under Massachusetts law, he must meet the statutoiy requirements under c. 40, §53.[3] As only one taxable inhabitant of the City of Boston, Policastro clearly fails to meet a primary requirement of c. 40, §53.
However, Policastro may also fail to meet other requirements of c. 40, §53 that are not so easily cured. Defendants argue that Policastro no longer has the right to sue because the challenged action has already *275 occurred: the land has been sold. Defendants point to the language of c. 40, §53, offering taxpayers possible relief when the city is “about to” raise or expend money or incur obligations. Massachusetts case law clearly support this interpretation “that a taxpayer’s petition will lie only before such obligations are incurred and not afterwards." Kapinos v. Chicopee, 334 Mass. 196, 198 (1956), see also Fuller, 252 Mass. at 260; Ayscough v. Andover, 19 Mass.App.Ct. 125, 127-28 (1984). However, in these cases, the petitioners were seeking to enjoin municipal actions that were entirely or almost entirely completed. See e.g. Kapinos, 334 Mass. at 196-99 (finding that plaintiffs were too late to challenge the lease of city-owned land permitting lessee construction company to remove fill from the land in return for monetaiy payments, when the action was commenced after the lessee had removed fill for over eleven months, had practically completed its removal and had paid one half of the amount due under the lease); Ayscough, 19 Mass.App.Ct. at 127-28 (dismissing an action seeking to enjoin the town from carrying out a “sale/lease back” transaction involving the rehabilitation of old town-owned buildings in violation of state law as moot, because the rehabilitation phase of project was completed at the time of appeal).
Here, the BRA voted to approve the final designation of the ISB as redeveloper of the parcel for the purpose of constructing the “Islamic Society of Boston Cultural Center” on August 10, 2000, the land was conveyed and the deed recorded on May 16,2003, and construction is currently underway. Not knowing the precise extent of the construction that has been undertaken, it is difficult to say whether or not remedy under c. 40, §53 has been foreclosed. However, as the Defendants have not asserted that construction is nearing completion, Policastro may not be too late.
The conveyance of land by the City of Boston in this case may not amount to the City of Boston raising or expending money or incurring obligations under c. 40, §53.[4] ‘The statute upon which the petition is based was enacted to prevent the expenditure of municipal funds for an illegal purpose and to prohibit the raising of money by taxation in any manner not authorized by law.” Lynch v. Cambridge, 330 Mass. 308, 311 (1953), quoting Armory v. Assessors of Boston, 310 Mass. 199, 202 (1941); see also Pratt, 396 Mass. at 44 (“The words ‘to raise money’ as applied to a municipality commonly mean to raise by taxation”). Here, it is clear that the City of Boston is not raising money by selling the parcel of land. See Pratt, 396 Mass. at 44. Similarly, the conveyance did not call for the City of Boston to assume any obligations. The only issue here is whether the sale of city-owned land to the ISB was an expenditure. As stated above, expenditures appear to refer only to spending municipal funds. See Lynch, 330 Mass. at 311. However, Massachusetts courts have not directly determined whether a sale of city-owned land should be considered such an expenditure. See Nichols v. City of Lynn, 371 Mass. 878, 880 (1997) (declining to address taxpayer standing to maintain the challenge to a sale of property by the ciiy because it was clear that the claim lost on the merits). In Lynch v. Cambridge, the Court found that granting an easement to a gas company to lay and maintain pipeline for the transmission of natural gas under a city-owned reservoir did not require the ciiy to “raise, spend, or borrow any money.” Lynch, 330 Mass. at 311. The court held that: “On the contraiy it is to receive money for the easement while it is in effect. No obligation of the city under the easement agreement comes within the purview of §53.” Id.[5]
Here, the BRA has owned the parcel since it was obtained by eminent domain as part of the Campus High Urban Renewal Plan Area in the 1970s. At the time of sale to the ISB, the parcel was vacant. Applying the reasoning from Lynch, this sale of land does not come within the purview of c. 40, §53. The City of Boston is not raising or spending money or incurring any obligations by selling the land. Instead, the City of Boston received a cash payment and, along with RCC, will be receiving various services from the ISB in accordance with the Cooperation Agreement completed at the time of Closing.

III. Policastro Has Statutory Basis for Standing Under G.L.c. 12IB or G.L.c. 121A

Persons allegedly aggrieved by decisions made by the BRA in its capacity as an urban renewal agency, pursuant to G.L.c. 121B, have no explicit statutory right to appeal. St. Botolph Citizen’s Committee, Inc. v. Boston Redevelopment Authority, 429 Mass. 1, 10-11 (1999).[6] The Supreme Judicial Court has declined to extend the right to appeal decisions of the BRA in connection with urban redevelopment corporations under G.L.c. 121A to provide a general remedy under G.L.c. 121B. St. Botolph, 429 Mass. at 11 (finding the procedure for public approval under G.L.c. 12 IB more stringent and the legislative choice not to enact a parallel right of appeal an intentional one). However, the Court did extend the c. 121A right to appeal to c. 12 IB decisions specifically when the plaintiffs were owners of land which was to be taken by eminent domain for the urban renewal project. Protective Order of Elks, Lodge No. 65 v. Planning Bd. of Lawrence, 403 Mass. 531, 545-47 (1988).
The Court in Elks Lodge based its analysis of standing on the principle that “[a] party has standing when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred.” Elks Lodge, 403 Mass. at 545, quoting Massachusetts Ass’n of Independent Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 293 (1977); see Enos, 432 Mass. at 135; Penal Institutions Comm’r for Suffolk County v. Comm’r of Correction, 382 Mass. 527, 532 (1981) (“[I]t is not enough that the plaintiff be injured by some act or *276 omission of the defendant; the defendant must additionally have violated some duly owed to the plaintiff’). Thus, the court held that the plaintiffs, as landowners, did not have standing to challenge the propriety of the financial plan of the urban renewal project because they were not within the “area of concern” of the statutory requirement of a sound financial plan. Id. at 545.[7] However, the plaintiffs did have standing to challenge the urban renewal agency’s findings which related to the eligibility of their properly for urban renewal under G.L.c. 121B, §48. Id. (“[T]he private rights most clearly affected by proceedings under §48 are those of owners and tenants of land in the project area”).
Massachusetts courts have not yet extended the c. 121A right to appeal to plaintiffs challenging decisions made pursuant to c. 12 IB based on any constitutional claim other than a taking.[8] Nevertheless, applying the “area of concern” analysis used in Elks Lodge, it is apparent that claiming violations of the Establishment Clause and the Massachusetts Anti-Aid Amendment as a resident taxpayer of the City of Boston provides sufficient grounds to extend the c. 121A right to appeal to c. 121B decisions. The analysis requires determining whether the alleged injuries fall within the area of concern that the relevant statute or constitutional guarantee “was enacted to protect, or, stated another way, whether the statute creates a right in the particular plaintiff to redress those injuries.” Enos, 432 Mass. at 139 n.6; see Penal Institutions Comm’r for Suffolk County v. Comm’r of Correction, 382 Mass. 527, 532 (1981).
The Establishment Clause and the Massachusetts Anti-Aid Amendment share similar areas of concern. The Establishment Clause of the First Amendment of the Constitution of the United States declares that “Congress shall make no law with respect to an establishment of religion.” U.S. Const, amend. I. This decree applies “to states and their political subdivisions” through the Fourteenth Amendment. Santa Fe Indep. School Dist. v. Doe, 530 U.S. 290, 301 (2000). According to the Supreme Judicial Court, the primary purpose of the Establishment Clause is “to assure that government maintains ‘a benevolent neutrality which will permit religions exercise to exist without sponsorship and without interference.’ ” Pielech v. Massasoit Greyhound, Inc., 423 Mass. 534, 542 (1996), see McCreay County, KY v. American Civil Liberties Union of KY, 125 S.Ct. 2722, 2724 (2005). Similarly, the Anti-Aid Amendment was enacted due to concern “about aid to sectarian institutions and, more generally, with halting the politically divisive and financially wasteful practice of direct aid to private schools and institutions.” Attorney General v. School Comm. of Essex, 387 Mass. 326, 334-35 (1982), quoting Commonwealth v. School of Comm. of Springfield, 382 Mass. 665, 683 (1981). Thus, essentially both constitutional provisions place a duty on state actors within Massachusetts to act with a “secular purpose and a primary effect that neither advances nor inhibits religion.” Kent v. Commissioner of Educ., 380 Mass. 235, 241 (1980).
Here, treating the factual allegations in his Complaint as true, Policastro has alleged sufficient facts to place him within the area of concern of the Establishment Clause and the Anti-Aid Amendment. As a resident taxpayer of the City of Boston, Policastro has the right to contest the sale of publicly owned land at a below-market price to a religious institution for the purposes of operating a house of worship and the endorsement of a particular religion and excessive entanglement created by the establishment of a particular lecture program at a public college.[9]

ORDER

For the foregoing reasons, the defendants’ Motions to Dismiss are DENIED.

 The defendant RCC moves to dismiss the complaint pursuant to both Mass.R.Civ.P. 12(b)(6) and 12(b)(1). However, because the present case alleges violation of a provision of the Massachusetts Constitution, subject matter jurisdiction clearly exists.

 Article 46, §2, of the Amendments to the Massachusetts Constitution, as it was rewritten in 1974 by art. 103 of the Amendments, provides in pertinent part: “No grant, appropriation or use of public money or property or loan of credit shall be made or authorized by the Commonwealth or any political subdivision thereof for the purpose of founding, maintaining or aiding any infirmary, hospital, institution, primary or secondary school, or charitable or religious undertaking which is not publicly owned and under the exclusive control, order and supervision of public officers or public agents authorized by the Commonwealth or federal authority or both

 While there is apparently no Massachusetts case law discussing special treatment for taxpayers making constitutional claims, the United States Supreme Court has held that enforcement of the Establishment Clause does not except plaintiffs from meeting the standing requirements of Article III. Valley Forge. 454 U.S. at 475-76, 488-90.

 The United States Supreme Court has found that the disposal of government land authorized pursuant the Properly Clause cannot be challenged by a taxpayer alleging violation of the Establishment Clause because it is not an exercise of power under the Taxing and Spending Clause. See Valley Forge, 454 U.S. at 479-80.

 The First Circuit in Donnelly v. Lynch decided based on the “long-established rule of municipal taxpayer standing” under federal law that the taxpayers of a town in which a creche was displayed who alleged that the creche represented state sponsorship of religion had standing. Donnelly v. Lynch, 691 F.2d 1029, 1030-32 (1st Cir. 1982).

 General Laws c. 12 IB, §47 provides private citizens a limited right to petition for a writ of certiorari against an urban renewal agency only if their land has been taken, or has been proposed to be taken, by eminent domain. This must be done within thirty days of publication of notice of such determination. Policastro does not allege any right to the land in this case.

 The court explained that the plaintiffs would have had standing as taxpayers because the urban renewal agency owes a duly to State taxpayers to ensure that the financial plan is sound. Elk Lodge, 403 Mass. at 545.

 The Court in St Botolph distinguishes the plaintiffs in Elks Lodge based upon both their status as landowners challenging a taking and on the fact that they were claiming *277 the violation of a constitutional right. St. Botolph, 429 Mass. at 12. Yet, the Elks Lodge decision does not discuss the latter factor as a basis for standing in itself, sticking to the “area of concern” analysis. See Elks Lodge, 403 Mass.f at 545-47.

 However, Count II may not survive a motion for summary judgment if the defendants can show that Roxbury Community College has courses or hosts lectures or meetings about other religious sects. The Supreme Court of the United States has held that an “equal access” policy for allowing religious groups and speakers to use university facilities, along with other religious and secular organizations, does not constitute excessive entanglement. Widmar v. Vincent, 454 U.S. 263, 270-75 ,(1981) (passing all three prongs of the Lemon v. Kurtzman test). In the event that RCC has such a policy, not allowing the Islamic Society of Boston the opportunity to hold lectures or meetings at RCC would instead be a content-based exclusion of religious speech. Id. at 277. Furthermore, the Supreme Court has stated that education in comparative religions are customary and constitutionally appropriate when objectively presented as part of a secular program of study. Edwards v. Aguillard, 482 U.S. 263, 273 (1987); School District of Abington Township, PA v. Schempp, 374 U.S. 203, 225 (1963).