Hamlin, Sandra L., J.
This action was brought by the plaintiff, James C. Policastro (“Policastro”), against the several defendants pursuant to G.L.c. 231A, seeking a declaratory judgment that the Boston Redevelopment Authority’s (the “BRA”) sale of urban renewal *283 land to the Islamic Society of Boston[2] (the “ISB”) violated the First Amendment of the United States Constitution and the Massachusetts Anti-Aid Amendment. This action is before the Court on the parties’ cross motions for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c) and Superior Court Standing Order 1-96.[3] For the reasons that follow, the defendants’ motions for judgment on the pleadings are ALLOWED, and the plaintiffs motion for partial judgment on the pleadings is DENIED.

BACKGROUND

On September 28, 2004, Policastro filed a complaint alleging violations of the United States and Massachusetts Constitutions, seeking a declaratory judgment regarding a land transaction between the BRA and the ISB which was consummated on May 16, 2003. The BRA is an urban renewal agency and redevelopment authority. The ISB is a corporation organized under G.L.c. 180. The land which is the subject of this action is an approximately 45,000 square foot parcel of previously vacant land in Roxbuiy, Massachusetts, which was taken by the BRA by eminent domain during the 1970s. In 1992, the BRA selected the Muslim Council of Boston as redeveloper of the parcel. Later in 1998, the ISB was substituted as redeveloper. Between 1992 and the land sale in 2003, the BRA held numerous noticed community meetings and sought public comment during the various phases of the redevelopment process. On May 16, 2003, the BRA conveyed the parcel to the ISB. The total agreed-upon value of the land, according to the “Term Sheet” between the parties, was $401,187.50. The consideration paid by the ISB for the land was in the form of cash, a credit, and public benefits.[4]
Policastro alleges that the sale of land by the BRA to the ISB was substantially below market value, constituting an illegal and unconstitutional subsidy of a specific Islamic sect and an unconstitutional entanglement and integration between a governmental institution of higher learning and the same Islamic sect. Policastro’s only connection to this transaction is as a resident and taxpayer of the City of Boston.

PROCEDURAL HISTORY

The BRA, ISB, and Roxbuiy Community College (“RCC”) moved to dismiss Policastro’s complaint pursuant to Mass.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The defendants asserted that Policastro lacked the requisite standing to bring the suit. The Court (Staffier Holtz, J.) denied the motion to dismiss, and granted Policastro standing on limited grounds. While holding that he did not meet the requirements of municipal taxpayer standing under G.L.c. 40, §53 and recognizing that G.L.c. 231A does not provide an independent basis for standing, the Court found that “claiming violations of the Establishment Clause and the Massachusetts Anti-Aid Amendment as a resident taxpayer of the Ciiy of Boston provides sufficient grounds to extend the c. 121A right to appeal to c. 12 IB decisions.” Policastro v. Boston, Civil No. 044279 (Suffolk Super.Ct. Nov. 8, 2005) (Staffier Holtz, J.) [20 Mass. L. Rptr. 273).
As a result of this ruling, the BRA filed a Notice of Intent to File the Administrative Record pursuant to Superior Court Standing Order 1 -96. Policastro moved for a default judgment against the BRA for failure to answer its complaint. The motion was denied, and the Court (Spurlock, J.) ordered that the BRA may file an administrative record and that Superior Court Standing Order 1-96 governed judicial review.
Subsequently, Policastro moved to supplement the administrative record with materials that were not before the BRA when it voted to convey the property in question to the ISB. The Court (Quinlan, J.) allowed Policastro to supplement the record for the purpose of demonstrating that there is a genuine issue of material fact relating to a state or federal constitutional claim.

DISCUSSION

A. Standard of Review

Pursuant to Mass.R.Civ.P. 12(c), any party may move for judgment on the pleadings. A motion for judgment on the pleadings is a “challenge to the legal sufficiency of the complaint.” Minaya v. Massachusetts Credit Union Share Ins. Corp., 392 Mass. 904, 905 (1984). It will only lie where there are no material facts in dispute on the face of the pleading. Clarke v. Metropolitan District Commission, 11 Mass.App.Ct. 955, 955 (1981). When the motion is brought by a defendant as here, it is treated in effect as a motion to dismiss. Jarosz v. Palmer, 436 Mass. 526, 529 (2002). As such, the court accepts as true “the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiffs favor ...” Blank v. Chelmsford Ob/Gyn, P.C., 420 Mass. 404, 407 (1995). The motion should not be granted “unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98(1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

B. G.L.c. 121A & 121B

Both G.L.c. 121A and G.L.c. 12IB provide comprehensive and detailed statutory schemes for redevelopment proj ects. While having similar goals, they achieve them in fundamentally different ways. St Botolph Citizens Committee v. Boston Redev. Auth., 429 Mass. 1, 11 (1999). G.L.c. 121A allows privately owned entities to undertake redevelopment projects, subject to the approval of the BRA and the oversight of the Department of Housing and Community Development. G.L.c. 121B outlines the existence and powers of the BRA, and the process for initiating and planning public redevelopment projects. An approved urban renewal plan is created by the BRA for such projects, and the redevelopment projects must be implemented to conform to this plan. This involves extensive public *284 approval and participation. In contrast, the G.L.c. 121A “procedures for public approval are considerably less stringent... and there is less public participation throughout the process.” St. Botolph, 429 Mass. at 11.
G.L.c 121B “provides no explicit right of appeal to persons allegedly aggrieved by decisions of the BRA, in its capacity as a urban renewal agency.” Id. Decisions of the BRA which are made under G.L.c. 121A, however, are appealable by persons aggrieved who file an action in the nature of certiorari. St. 1960, c. 652, §13; see G.L.c. 249, §4. This remedy is exclusive. See St. 1960, c. 652, §13. Persons aggrieved by a BRA action under G.L.c. 121A must file a proceeding in the nature of a writ of certiorari within thirty days of the action complained of, or are time-barred from doing so. See id.
Before the prior rulings in this case, the G.L.c. 121A right of appeal had only been extended to decisions made pursuant to G.L.c. 12 IB where there has been a taking by eminent domain. See Protective Order of Elks, Lodge No. 65 v. Planning Bd. of Lawrence, 403 Mass. 531, 545-47 (1988). In finding that Policastro has similar standing under G.L.c. 121A, the Court found that his claimed violations of the Establishment Clause and the Massachusetts Anti-Aid Amendment fell “within the area of concern” of G.L.c. 12IB or its regulatory scheme. The Court made clear that this was his exclusive avenue for redress, as G.L.c. 231A does not provide an independent basis for standing for Policastro and he does not meet the requirements of municipal taxpayer standing under G.L.c. 40, §53.
C. Policastro’s Appeal and Statute of Limitations
The Court (Staffier-Holtz, J.) has found that the G.L.c. 121A right of appeal should be extended to a G.L.c. 12IB decision which implicates the Establishment Clause of the First Amendment of the United States Constitution and the Anti-Aid Amendment of the Massachusetts Constitution. While Policastro’s questions may be of a Constitutional dimension, they are only actionable by him as a municipal taxpayer to the extent that they fall within G.L.c. 12 IB or its regulatory scheme. His standing is not based on the Constitution or status as a taxpayer alone; it is based on his constitutional concerns as a municipal taxpayer which fall within the area of concern of G.L.c. 121B.
Under the G.L.c. 121A right of appeal extended to him, Policastro’s exclusive remedy is an action in the nature of certiorari. See St. 1960, c. 652, §13. This provision of G.L.c. 121A shortens the normally sixty-day period for filing actions in the nature of certiorari to thirty days.[5] See G.L.c. 249, §4; see also Raso v. Lago, 958 F.Sup. 686, 696 (D.Mass. 1997) (holding that c. 12 IB appeal under c. 121A time-barred by 30-day statute of limitations).
As such, Policastro had thirty days from May 16, 2003 to file an action. He filed his action on September 28, 2004, more than sixteen months after the challenged sale by the BRA, and more than fifteen months after the applicable thirty-day statute of limitations had run. Consequently,. Policastro’s challenge must fail, as it is time-barred by statute. He has no other legal standing to challenge the sale.
The short period of limitations is appropriate given the statutory goals of G.L.c. 121A and 12 IB of promoting community growth through the eradication of blighted open areas in urban settings. A short period of limitations is important in providing security to those who make financial or time commitments to such proj ects that there will not be delays or stoppages due to protracted litigation. Furthermore, land sales of this nature under G.L.c. 121B generally provide for extensive notice and opportunity for public participation and comment. Such a process was followed in this matter. Policastro declined to participate in any way before filing suit.
In short, the goals of the statutoiy scheme would be frustrated by extending the thirty-day statute of limitations and allowing a suit sixteen months after a questioned land sale, where extensive planning, commitments, and even construction have taken place in the security that the period for notice, comment, and the thirty-day window for administrative challenges had passed.
This Court declines to revisit the issue of Policastro’s standing to bring this action, which has already been ruled upon. While each Superior Court judge is empowered to depart from prior rulings of their colleagues until final judgment or decree has been entered, they “should . . . hesitate to undo the work of another” Superior Court “judge.” Peterson v. Hopson, 306 Mass. 597, 603 (1940). Any attempt to re-litigate the issue of Policastro’s standing in this action is more properly addressed to our Appeals Court.[6]

ORDER FOR JUDGMENT

For the foregoing reasons, the defendants’ motions for judgment on the pleadings are ALLOWED and the plaintiffs motion for partial judgment on the pleadings is DENIED.

For purposes of this decision, ISB will refer collectively to Islamic Society of Boston and Islamic Society of Boston Trust.

Policastro has moved for partial summary judgment, the BRA has moved for entry of judgment, and the ISB has moved for summary judgment. Notwithstanding the parties’ characterization of their motions, the Court will treat these motions as requests for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c) and Superior Court Standing Order 1-96 based on the prior rulings in this case.

The total cash paid was $175,000. A credit of $43,820 was given for costs and expenses incurred by the developer for work performed in connection with hazardous materials on a portion of the land. In addition, the following public benefits were agreed to by the ISB: maintenance of “Play Area *285 #4” adjacent to the parcel for ten years ($38,533); maintenance of Clarence ’’Jeep" Jones Park for ten years ($154,130); continuing series of lectures at RCC on various aspects of Islam for ten years ($115,598); development of a research library on Islamic law and history with 5000 titles ($80,000); and assistance of the Roxbuiy Community College Foundation in ongoing fund-raising campaign ($67,065).

Policastro’s suit would fail regardless of whether the applicable limitations period was thirty or sixty days.

‘There would be no end of litigation if a party, defeated before one judge, were privileged to go before another judge of the same court and in the same case seek a different decision upon the same point. Such procedure would be most unseemly. It would tend to bring the administration of justice into contempt.” Barringer v. Northridge, 266 Mass. 315, 320 (1929).