## Robert L. Coleman *vs.* Boston Redevelopment Authority.

No. 02-P-1451.

Suffolk. February 2, 2004. - June 3, 2004.

Present: Laurence, Kaplan, & Beck, JJ.

*Redevelopment Authority. Public Records. Municipal Corporations,* Public record. *Real Property,* Appraisal report.

Discussion of the exemption under G. L. c. 4, § 7, Twenty-sixth (*i*), as amended through St. 1996, c. 450, § 2, to the requirement of production of documents and other records in official custody when requested for inspection by any person under the Public Records Act, G. L. c. 66, § 10, for appraisals of real property acquired or to be acquired until a final agreement had been entered into or until any litigation relative to such appraisal had been terminated or the time within which to commence such litigation had expired. [241-243]

This court concluded that the defendant redevelopment authority was not entitled, under G. L. c. 4, § 7, Twenty-sixth (*i*), as amended through St. 1996, c. 450, § 2, to withhold from the plaintiff real estate appraisals pertaining to a particular piece of property that was part of a larger development project, where the redevelopment authority had entered into a final agreement regarding that piece of property. [243-246]

Civil action commenced in the Superior Court Department on December 12, 2000.

The case was heard by *Carol S. Ball,* J., on a motion for summary judgment.

*Rudolph F. Pierce* for the defendant.

*Mark M. Madden* for the plaintiff.

Kaplan, J. Toward carrying out the "Convention Center Project" (the construction of a Boston convention and exhibit center), St. 1997, c. 152, authorized the Boston Redevelopment Authority (BRA) to acquire by purchase or eminent domain some thirty parcels of land, comprising about sixty acres in South Boston. BRA made successive eminent domain takings;

for each parcel taken, BRA secured two real estate appraisals, in accord with G. L. c. 79, § 7A. Some owners accepted in full payment the pro tanto payments offered to them. Some negotiated settlements with BRA that exceeded the pro tanto offers. Some accepted the pro tanto payments but reserved the right to seek additional compensation by resort to litigation. As of December, 2001, thirteen parcels were in the last category. BRA and the owner of the property at Summer Street, D Street, and Fargo Street, known as the "Pappas" property, entered into a negotiated final settlement.

Thereafter, on November 9, 1999, the plaintiff in the present action, Robert L. Coleman, a real estate appraiser, wrote to BRA requesting, pursuant to the Massachusetts freedom of information law known as the Public Records Act (G. L. c. 66, § 10, read together with G. L. c. 4, § 7, Twenty-sixth), that BRA produce, for inspection and copying, a range of the documents in its possession related to the Pappas property's acquisition and settlement. The plaintiff's letter called attention to c. 4, § 7, Twenty-sixth (*i*) (exemption [*i*]), an exemption of real estate appraisals in official hands from required disclosure upon certain conditions, and stated that the exemption of the Pappas property appraisals was at an end because a final agreement regarding this property had been entered into. BRA through its counsel replied on February 18, 2000. It declined to produce the Pappas property appraisals (as well as documents integrally related to the appraisals), asserting the view that the exemption continued until all the parcels in the project had similarly come to rest by agreement (or by closure of litigation). In fact BRA did produce for Coleman a considerable number of documents involving the Pappas property, but it has withheld the appraisals (and, presumably, any integrally related documents).

Having had no response from BRA by January 20, 2000, the plaintiff had written on that date to the supervisor of public records (in the office of the Secretary of the Commonwealth) asking the supervisor to open an "appeal" in the matter of the plaintiff's demand on the BRA, see G. L. c. 66, § 10(*b*).

On April 11, 2000, the supervisor wrote to BRA setting out his opinion and directing BRA to produce the appraisals as requested. BRA still demurred. Accordingly, the supervisor

referred the matter to the Attorney General for review and enforcement, see *ibid.* Agreeing with the supervisor, the Attorney General on September 7, 2000, issued his opinion and order to BRA to produce.

Coleman commenced the present action in the nature of certiorari in Superior Court against BRA on December 12, 2000. Upon Coleman's motion for summary judgment, the court held, with opinion, in his favor, and by judgment on findings ordered BRA to comply with the orders of the supervisor and the Attorney General. BRA appeals to our court.

1. The Public Records Act adopts a broadly compendious definition of the documents and other records and things in official custody[1] that must be produced when requested for inspection "by any person," G. L. c. 66, § 10(*a*). Then the law lists particularized exemptions. Among these is exemption (*i*):

> "appraisals of real property acquired or to be acquired until (1) a final agreement is entered into; or (2) any litigation relative to such appraisal has been terminated; or (3) the time within which to commence such litigation has expired."

G. L. c. 4, § 7, Twenty-sixth (*i*), as amended through St. 1996, c. 450, § 2.

On its face by natural reading this formulation looks to a temporary exemption for each singular appraisal as related to the particular parcel, not any connected or abutting property or other property simultaneously or later acquired; the formulation is not directed to nor does it cover or deal with appraisals as a collective comprising all the appraisals for all the parcels in a project. Any interpretation in the latter style would have the effect of extending the duration of the exemption for all apprais-

---

[1]General Laws c. 4, § 7, Twenty-sixth, as amended by St. 1973, c. 1050, § 1, provides: " 'Public records' shall mean all books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose, unless such materials or data fall within the following exemptions . . . ."

als in the collective until the last was absorbed through final negotiated agreement or disposal by litigation.

With experience over a period of some thirty years in administering the statute including claims of exemption,[2] the supervisor expressed his conclusion to BRA in the present case thus:

> "You have also suggested that the phrase 'any litigation relative to such appraisal has been terminated' relates to all Convention Center site properties rather than the appraisal for the property which is the subject of Mr. Coleman's request. I must disagree with your interpretation. The language of the exemption specifically refers to the property which is the subject of the appraisal, not to properties which are related to the same project. . . . Accordingly, as the purchase agreement of the property which is the subject of the appraisal has already been entered into, exemption (i) will not permit [BRA] to withhold appraisals of that property."

The opinion of the Attorney General was to the same effect, treating appraisal reports under the statute as "parcel specific."[3] Similarly the Superior Court judge put the question as "whether the pending litigation and the failure to reach a final agreement with Convention Center Property owners of real estate other than Pappas allows the BRA to withhold the appraisal documents related to the Pappas property." The judge answered the question in the negative.

The supervisor's view was not newly minted for the present case; it has been earlier maintained.[4] The supervisor's opinions in case nos. SPR 99-397 and SPR 99-398 (consolidated) are especially interesting because the situation under analysis was much like the present. In summary, there were three eminent domain takings of portions of the real estate in question. As to

[2]The basic legislation, enacted in 1973, St. 1973, c. 1050, is mentioned *infra.*

[3]The discussion of the Public Records Act by Professor Cella supports this view, see Cella, Administrative Law & Practice § 1162, at 489-490 (1986); *id.* at § 1172, at 569-570.

[4]See the supervisor's recommendation to the Governor in 1979, mentioned *infra,* and the supervisor's opinions in case nos. SPR 95-097, SPR 99-397, and SPR 99-398.

two takings, the acquisitions were complete; the acquisition to follow the third taking was incomplete. In issue was a request for the appraisals in the two completed cases. The official custodian declined to yield those appraisals because of the still outstanding third case. The supervisor rejected this contention and ruled that the requested appraisals must be produced. She wrote: "once one of the three alternatives [of exemption (i)] has occurred, exemption (i) will no longer allow the withholding of the subject appraisal. In this case, litigation regarding portions of the property taken by the [taking authority] in 1987 and 1991 is concluded. Accordingly, a condition of the exemption has been met and the exemption does not apply."

Reinforcing the decisions herein by the supervisor, the Attorney General, and the judge, are the propositions that a record in public hands is presumed to be public within the Public Records Act, see G. L. c. 66, § 10(*c*); *Worcester Telegram & Gazette Corp.* v. *Chief of Police of Worcester*, 436 Mass. 378, 382-283 (2002); the burden is laid on the custodian to overcome the presumption by "prov[ing] with specificity the exemption which applies," G. L. c. 66, § 10(*c*), as amended by St. 1973, c. 1050, § 3; *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 801 (1999); especially in the light of the presumption, the exemptions are narrowly construed, see *id.* at 801-802, citing *Attorney Gen.* v. *Assistant Commr. of Real Property Dept. of Boston*, 380 Mass. 623, 625 (1980); the reference to "any person" in § 10(*a*) means there is no requirement of "standing" by the person who requests production of records or any issue about the person's motives or purpose in making the request. *Pottle* v. *School Comm. of Braintree*, 395 Mass. 861, 866 n.6 (1985).[5]

2. BRA has no plausible response to the foregoing appreciation of exemption (*i*) as applied to the present case. BRA suggests that even where clause (1) is satisfied by the occurrence of a final agreement, clause (2) continues the exemption in ef-

---

[5]It is indicated that the plaintiff Coleman may figure as an expert on the part of some owners whose parcels have been taken but whose claims for compensation are still open. Coleman's motives or purpose in seeking disclosure of the Pappas appraisals are not to be considered, but of course this does not exclude consideration of the meaning or scope of the appraisals exemption (*i*).

fect as long as litigation is outstanding as to any other parcel in the project. This approach tries to gloss over the fact that the clauses of the exemption appear in the disjunctive ("or" being repeated), not in the conjunctive (the supervisor takes pains to stress this in his opinion herein). BRA's interpretation likewise attempts erroneously to enlarge and exaggerate the scope of clause (2). In another sense, BRA chooses to overlook the "parcel-specific" cast of the exemption.

BRA argues in vain from the 1979 amendment of the exemption (*i*). As originally enacted in 1973, the exemption read:

> "appraisals of real property to be acquired until (1) an agreement is entered into; or (2) three years have elapsed since the making of the appraisal, or until any litigation relative to such appraisal has been terminated, whichever occurs first."

G. L. c. 4, § 7, Twenty-sixth (*i*), as appearing in St. 1973, c. 1050, § 1. The difficulty with the "three years" as a basis for terminating the exemption was that by that period of time there would often have been no closure for a given parcel. Production of the appraisal in midstream would be premature and could put the Commonwealth to a possible disadvantage in confronting the particular owner who might squirrel away his own appraisals without limit of time. Just this problem with the 1973 text was recognized in a recommendation from the supervisor to the Governor's legislative office that the Governor approve the bill that emerged with the Governor's signature as St. 1979, c. 230, of June 1, 1979 — setting the present text.[6] The change did not introduce anything resembling the indefinite postponement of all disclosure as BRA would have it; it did not depart from the parcel-specific character of the exemption. The "whichever occurs first" appeared by way of emphasis in the earlier version of the statute and did not have to be added to the present text.

BRA cites other authorities. The Supreme Court of New Hampshire in *Perras* v. *Clements*, 127 N.H. 603, 604-606 (1986), used a "balancing" test in applying an exemption under the State's "right-to-know" law. The exemption did not mention appraisals; it spoke of "confidential, . . . or financial

---

[6]An immaterial change in punctuation was effected by St. 1996, c. 450, § 2.

information . . . and other files whose disclosure would constitute invasion of privacy." *Id.* at 605. The plaintiff in *Perras* owned property which together with properties of others was under condemnation for highway construction. The plaintiff sought omnibus disclosure of the State's appraisal reports. On the particular facts as balanced, the court seemingly denied disclosure of the State's appraisals even of properties of others whose acquisitions had been completed. As to the plaintiff's property, still an open case, the plaintiff was remitted to discovery against the State or to an exchange of appraisals with the State, with the State apparently willing. The terms of the statute and approach thereto make any comparisons with our case shaky indeed.

In *Black* v. *Department of Transp.*, 262 Ga. 342, 342 (1992), the question was whether an exemption from the Georgia open-records law, for "[r]eal estate appraisals . . . made for or by the State . . . relative to the acquisition of real property until such time as the property has been acquired," extended, as the court said, "through the condemnation process or end[ed] upon [the taking authority's] payment into court of its valuation of the property." The court adopted the former alternative, yielding the longer period of exemption lasting until the completion of acquisition (including litigation), as distinguished from the period to the date of the pro tanto payment. *Id.* at 343. This is consistent with our exemption (*i*).

BRA refers to a case in Superior Court where the judge intimated it was possible in imaginable circumstances that a party might compel an adversary in litigation to provide discovery of a document whose production could not otherwise be compelled under the Public Records Act because exemption (*i*) had not yet expired. There is other authority that a public agency may not, by characterization as "work product," withhold documents whose production is compellable under the terms of the Act. *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. at 801. A discussion of possible relationships between discovery and the Public Records Act would take us far afield and would not assist in deciding our immediate case.

To conclude: Having struggled without success against the

restraints of the statute, BRA urges the court to go the whole way and read it at wholesale to promote a general policy that could translate as "leveling the playing field" — allowing the Commonwealth to keep its appraisals in a lockbox until the last gasp of the acquisitions in a project, just as owners may do with their own appraisals without any limit of time. This would be an impermissible extreme in using a statute. BRA forgets that, as we remarked in *Worcester Telegram & Gazette Corp.* v. *Chief of Police of Worcester*, 58 Mass. App. Ct. 1, 3 (2003), the "primary purpose" of the Public Records Act is disclosure, not withholding. The Legislature has taken a middle ground on the appraisal issue — disclosure for closed acquisitions, withholding for still open cases where one-sided disclosure by the Commonwealth might possibly weaken its position as negotiator or defendant. The Attorney General doubted an owner or owner's expert could expect to gain much advantage or the Commonwealth suffer much hurt in a going transaction or litigation from the owner's access to the Commonwealth's appraisal of a different parcel in a closed case, although perhaps the parcel was located in the same project. Against any such putative loss to the Commonwealth may be set the benefits, such as they may be, to the public of the assured reach by anyone interested (watchdog groups and media included) to examine the Commonwealth's appraisal reports in the property acquisitions as they close.

*Judgment affirmed.*