van Gestel, Allan, J.
This matter is before the Court on cross motions for summary judgment. The motions are: (1) Boston Redevelopment Authority’s Motion for Summary Judgment, Paper #15; and (2) The David Project’s Motion for Partial Summary Judgment, Paper #23. The underlying case is an action under the Public Records Act, G.L.c. 66, sec. 10 by The David Project, Inc. (“David Project”) to obtain certain public records from the Boston Redevelopment Authority (the “BRA”).

BACKGROUND

Normally, these kinds of cases present relatively simple issues, akin in many ways to a motion to compel documents under the Rules of Civil Procedure, but with slightly different production criteria and parameters. This case, however, is different. Lurking behind it is an apparent effort by the David Project, a Jewish action group, to challenge, and perhaps bring to a halt, the construction of a Mosque and cultural center on a parcel of land adjacent to the Roxbuiy Community College, conveyed to the Islamic Society of Boston (“ISB”) by the BRA. Paragraphs 4 through 8 of the complaint, although hardly necessary for its purposes, sets the tone, as follows:
4. The plaintiffs public records request involves the BRA’s transfer of publicly-owned land to the ISB for construction of a mosque and cultural center (the “BRA-ISB Project”). Although the BRA had valued the land at $2,010,966, the BRA sold the property to the ISB for only $175,000, plus an agreement by the ISB to provide Roxbuiy Community College with fundraising, books on Islam and an Islamic lecture series.
5. The BRA’s Deputy Director Muhammed Ali-Salaam (“Ali-Salaam”) has for many years been the BRA official responsible for promoting, orchestrating, overseeing, negotiating and implementing the BRA-ISB Project. As far back as 1992, Ali-Salaam identified himself as the “Project Manager” of the project for the BRA. From 1992 through at least 2004, Ali-Salaam was the BRA official responsible for all negotiations relating to the sale of the BRA property to ISB and was responsible for shepherding the development through the approval process within the BRA.
6. Ali-Salaam, while serving as the key BRA official negotiating and orchestrating the BRA-ISB Project on behalf of the public agency, was simultaneously serving as one of the ISB’s key fundraisers. In late 1999, Ali-Salaam traveled to the Middle East to help the ISB raise money so it could purchase the property from the BRA and develop the mosque.
7. Not long after Ali-Salaam returned from his 1999 fundraising trip to the Middle East on behalf of the ISB, the estimated fair market value of the BRA property was inexplicably reduced from $2,010,966 to $401,000 and an agreement was reached by the BRA to convey the property to the ISB for only $175,000.
8. On information and belief, Ali-Salaam has used his position at the BRA to negotiate favorable terms on behalf of the ISB in connection with the BRA-ISB Project. For many years Ali-Salaam has been responsible for overseeing the Project for the BRA at the same time as he has served as a fundraiser, private counselor and organizer on behalf of the ISB.
*362 The remainder of the complaint contains perfectly appropriate allegations regarding the Public Records demand, the BRA’s response thereto, and why the David Project seeks assistance from this Court. The Court suggests that the five quoted paragraphs are not necessary because, as the David Project knows — and has argued to this Court — "there is no requirement of ‘standing’ by the person who requests production of records." Coleman v. BRA, 61 Mass.App.Ct. 239, 243 (2004), citing Pottle v. School Committee of Braintree, 395 Mass. 861, 866 n.6 (1985); Bougas v. Chief of Police of Lexington, 371 Mass. 59, 64 (1976). In short, it does not matter why the David Project seeks the records.
Regrettably, the David Project’s allegations, quoted above, in significant ways seem inaccurate and are seriously challenged. Most strikingly is the charge, repeated in the opposition papers to the BRA’s motion here, that “the BRA had valued the land at $2,010,966, the BRA sold the property to the ISB for only $175,000.” There is evidence that the BRA never made such a valuation and that papers already produced to the David Project make this clear.
A more disturbing comment about the situation appears in an e-mail sent from Anna Kolodner, Educational Director of the David Project, to participants in planning sessions aimed at filing an earlier suit called Policastro v. BRA et al., Suffolk Superior Court No. 04-4279-C (“Policastro”). Kalodner said:
As discussed previously, [a lawyer] is preparing to file a law suit. The BRA will be the defendant and we have identified a viable plaintiff [James C. Policastro]. Separation of church and state is the basis of the case. If you would like more detail please contact [the lawyer] directly. Filing the law suit will serve to trip the switch on the larger agenda of exposing the radical fundamentalist underpinnings of the Mosque and its leaders.[1]
In acting on an earlier motion in this case, this Court urged counsel to “calm the rhetoric.” That admonition appears to have fallen on deaf ears. The briefing on the present two cross motions is laden with words like “massive,” “highly charged,” “misconceived,” “rife with accusations,” “exceedingly intemperate and accusatory,” “intimidate and harass,” “transparent attempt to delay,” and “audacious.” This Court is not aided by these conclusory comments. On summary judgment, it acts, as it should, on undisputed facts and the law.
This Court has lived in and around Boston for over 70 years. It remembers, and takes notice of, the horrendous results in this City years ago when a fine Federal judge made an absolutely correct — legally—■ decision that has been blamed for one of Boston’s most ugly outbursts of racial animosity and hatred. The issue was the public school-busing decision in the 1970s. The situation that appears to underlie the demand for public records here, contains within it the seeds for an ugly religious clash between Islamics and non-Islamics in Boston at a time when tensions in the world are high, particularly in the Middles East involving Israelis, Palestinians, Sunnis, Shiites, Iraqis, Iranians and Americans. This Court does not want to stumble in its application of the law to the present situation and become the inadvertent cause of religious conflict. Consequently, it requests of counsel, indeed demands of counsel, that they exercise their skills and obligations as officers of the court to keep the matters underlying the present dispute from getting out of hand.
All of the foregoing notwithstanding, the Court will, as it must, now turn to the matters at hand, the cross motions for summary judgment.

DISCUSSION

Summary judgment is granted where, viewing the evidence in the light most favorable to the non-moving pariy, there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Cabot Corporation v. AVX Corporation, 448 Mass. 629, 636-37(2007); Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). “[T]he moving party must establish that there are no genuine issues of material fact, and that the non-moving party has no reasonable expectation of proving an essential element of its case.” Miller v. Mooney, 431 Mass. 57, 60 (2000). See also, Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
Here, of course, both sides are moving parties, but neither is fully comfortable with the other’s facts. As a result, the Court’s determinations on the two motions may have to assume different facts and inferences depending on which motion is in play.
The Public Records Law, G.L.c. 66, sec. 10, is relatively straightforward in its language.
(a) Eveiy person having custody of any public record, as defined in clause Twenty-sixth of section seven of chapter four, shall, at reasonable times and without unreasonable delay, permit it, or any segregable portion of a record which is an independent public record, to be inspected and examined by any person, under his supervision, and shall furnish one copy thereof upon payment of a reasonable fee. Every person for whom a search of public records is made shall, at the direction of the person having custody of such records, pay the actual expense of such search . . .
(b) A custodian of a public record shall, within ten days following receipt of a request for inspection or copy of a public record, comply with such request ... If the custodian refuses or fails to comply with such a request, the person making the request may petition the supervisor of records for a determina *363 tion whether the record requested is public. Upon the determination . . . that the record is public, he shall order the custodian ... to comply with the person’s request. If the custodian refuses or fails to comply, . . . the supervisor may notify the attorney general or the appropriate district attorney thereof who may take whatever measures he deems necessary to insure compliance with the provisions of this section ... If a custodian of a public record refuses or fails to comply with a request of any person . . . the superior court shall have jurisdiction to order compliance.
(c) In any court proceeding pursuant to paragraph (b) there shall be a presumption that the record sought is public, and the burden shall be upon the custodian to prove with specificity the exemption which applies . . .
Public records are defined in G.L.c. 4, sec. 7, Twenty-sixth as follows:
[A]ll books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any state agency, executive officer, department, board, commission, bureau, division or authority of the commonwealth, or any political subdivision thereof, or any authority established by the general court to serve a public purpose.
Recently, the Supreme Judicial Court has confirmed that the kinds of public records that are subject to c. 66, sec. 10 are those that are in the custody of state governmental entities and in the custody of governmental entities of political subdivisions of the Commonwealth. In other words, “the public records law applies to only one of the three branches of State government, namely, the Executive branch.” Kettenbach v. Board of Bar Overseers, 448 Mass. 1019, 1021 (2007).
In Kettenbach, the SJC affirmed that the Public Records Act, pursuant to the regulations of the Supervisor of Public Records, “shall be construed to ensure the public prompt access to all public records in the custody of state governmental entities and in the custody of governmental entities of political subdivisions of the Commonwealth.” Id. The BRA is such an entity.
Consequently, in a general way, c. 66, sec. 10 gives the David Project the right to prompt access to those public records of the BRA that do not fall within any exemption, and places the burden on the BRA to comply with a proper request. The BRA well knows its obligations under the statute. As recently as June 3, 2004, Justice Kaplan speaking for the Appeals Court wrote: “BRA forgets that, as we remarked in Worcester Telegram & Gazette Corp. v. Chief of Police of Worcester, 58 Mass.App.Ct. 1, 3 (2003), the ‘primary purpose’ of the Public Records Act is disclosure, not withholding.” Coleman, supra, 61 Mass.App.Ct. at 246.
The David Project’s position that it is entitled to what seems clearly to be public records in the custody of the BRA has strong backing in c. 66, sec. 10, in the Supervisor of Records regulations and in the decisions of the Supreme Judicial Court and the Appeals Court. The BRA carries a heavy burden to justify its refusal to produce any more records than it has already.[2]
The Court will assay the five separate grounds on which the BRA, on its motion, seeks relief.

The David Project does not have standing to bring this case.

As can be seen by examining the complaint, the initial Public Records Request, and the three pieces of correspondence that followed the initial request, attached as Exhibits A, B, C and D, are each on the letterhead of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. (“Mintz Levin”). The first three letters are signed by attorney Joseph D. Lipchitz, and the last letter by attorney Jeffrey S. Robbins. None of those letters mentions the David Project or suggests in any way that Messrs. Lipchitz or Robbins are acting for any particular client of Mintz Levin. For example, the first letter — which really is the request — begins with Mr. Lipchitz saying “I am writing to request production of public records from the City of Boston ...” The second letter, again by Mr. Lipchitz, starts out with reference to the records “produced pursuant to our Public Records Request . . .” The third letter, also from Mr. Lipchitz, in its lead sentence, refers again to “the public records request that I made ...” And in the forth letter Mr. Robbins begins by referring to the Public Records Request of “Joseph Lipchitz.”
The BRA argues that c. 66, sec. 10(b) addresses issues involving “the person making the request” and “with the person’s request." Since that “person” was not the David Project, the BRA argues that it is Mr. Lipchitz, not the David Project, that should have brought this action. The BRA amplifies this position by noting that it was Mr. Lipchitz in his own name, not the David Project, that later filed a written appeal with the Supervisor of Records claiming a failure or refusal on behalf of the BRA.
This Court considers there to be some merit to the BRA’s position on this issue, but not very much. Without delving deeply into the issue, there may be occasions in which a custodian of records needs to know the identity, as opposed to the purpose, of the requester in order to deal with one of the several exemptions that may be involved, or the BRA may become involved in pre-trial discovery with the requester and should not be inhibited by an attorney-client-privilege argument if, in fact, it was an attorney who made the request.
Be that as it may, Mass.R.Civ.P. Rule 17(a), dealing with actions by the real party in interest, contains a *364 savings provision that reads: “No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.”
As alluded to above, the parties are “playing hardball” in connection with the present request. The Court, therefore, will expect both sides to tow the line of what is required by the law under the circumstances. As such, the Court will not grant the BRA’s motion on this standing ground, but will permit the David Project, within ten court business days from the date hereof, to join Joseph D. Lipchitz as a party plaintiff. Failing such joinder, the Court will consider anew the standing issue.

The request filed, by Mr. Lipchitz was not a valid public record request

Here, the BRA points to two “flaws” in the request.
First, the BRA notes that Mr. Lipchitz’s initial letter, which is the request, seeks “records from the City of Boston.” The BRA is not the City of Boston. Rather, it is an independent body corporate and politic. On the other hand, the request letter was directed to the “Boston Redevelopment Authority, Harry Collings, Executive Director/Secretary, City Hall Square, Room 910, Boston, MA 02201" and the BRA responded by producing at least some of its own records involving the mosque project in issue.
Government entities are supposed to be cooperative with persons requesting public records and assist, not frustrate on technicalities, the requester when it is reasonable to do so.
This Court does not find the reference to records of the City of Boston, in a request addressed to the BRA at City Hall, a fatal flaw warranting summary judgment in favor of the BRA.
Second, the BRA challenges the contents of the request. Similarly, this Court was mildly critical of the contents when it ruled earlier, saying
The Court has reviewed the letters said by the David Project to constitute the demand for public records. Those letters, however, read more like the opening salvo in the quest for documents pursuant to Mass.R.Civ.P. Rule 34. Respectfully, there is a difference of some significance between a Rule 34 discovery request in civil litigation and a demand for the inspection of public records under G.L.c. 66, sec. 10. The most significant difference is that what is a “public record” under c. 66, sec. 10 is “defined in clause Twenty-sixth of section seven of chapter four” of the General Laws, not by creative counsel in a Rule 34 request.
Just like the kinds of Rule 34 request for production of documents that roll regularly off the computers of large law firms, Mintz Levin’s Mr. Lipchitz’s initial request here leads off with “instructions” as to what is a “document,” which reaches eveiything known to man and electronic devices, including all drafts, alterations, modifications, changes and/or amendments thereto.
Following the “instructions,” come the “definitions” that are somewhat, but not a lot, more focused. For example, “City of Boston” “shall include any employee, representative or agent of the City of Boston, or any of its agencies.” This Court has no idea how many thousands of people are scooped up in this net. As another example of staggering breadth, “ISB” “shall mean the Islamic Society of Boston, including any of its predecessors, including but not limited to the Muslim Council of America, and including any of their officers, directors, trustees, members, founders, attorneys or representatives.” Again, how many thousands are in this group?
After instructing and defining as broadly as above, the request then includes 24 separate categories of documents, some limited in time to a mere 17 years, back to January 1, 1990, and others with no time limit at all. Again, just as an example, the first requested documents call for “ [a]ll documents referring or relating to or reflecting the purchase, sale, designation or development, or potential purchase, sale, designation or development, of a parcel of land known as Parcel R-14 in the City of Boston.” The Court is told that Parcel R-14 is, or was, a part of the Campus High Urban Renewal Plan which was instituted in July of 1970, nearly 37 years ago.
While this Court sees nothing expressly on point in the statutory language, the regulations or the appellate rulings addressing c. 66, sec. 10, it has more than modest doubt that the Legislature was considering public document requests like that in issue here, calling for a response to the request in 10 days. Mr. Lipchitz, however, had no such hesitation. He closed his initial request stating: “Time is of the essence with respect to this request. As you know, the Public Records Law requires that a response to this request or access provided to the requested documents within ten (10) business days.”
Besides the girth of the request — which possibly can be alleviated by the assessment of costs to the entity and an expansion of time — the BRA complains that the request does not really identify any particular documents, or sets of documents in the possession of the BRA that the requester seeks to inspect. Each of the 24 separate requests begins with the words “All documents referring or relating to or reflecting or constituting ...” This is not a reasonable identification of public documents. While a requester need not ask with absolute precision for a particular document, a governmental entity is entitled to more than just a general category of what may be thousands of docu *365 ments before it must run the 10-day gauntlet, or even an extended gauntlet, like some knight errant scouring the countryside for any scrap, or digital bit, that may exist.
The Supervisor of Records’ regulations appear to contemplate the situation here. Under 950 CMR sec. 32.05(4), “(a]ny person seeking access to a public record or any portion thereof shall provide a reasonable description of the requested record to the custodian so that he or she can identify and locate it promptly.”
While this Court is inclined to require of the requester here a much more reasonable description of the requested records so that the BRA can identify it and locate it promptly, the Court will not do so with regard to those public records that the BRA already has located but not produced. As to the latter, it is only the cost of reproduction that is in play.

The BRA claims it never failed nor refused to comply with any request for public documents.

This contention by the BRA is not as it first appears. It seems to recognize that there may be more documents that the requester seeks. What the BRA is invoking with this objection is the application of 950 CMR sec. 32.06(2), which provides that
Estimates. A custodian shall provide a written, good faith estimate of the applicable copying, search time and segregation time fees to be incurred prior to complying with a public records request where the total costs are estimated to exceed ten dollars ($10.00).
The total costs here are clearly vastly more than $10.00.
The BRA says that on December 5,2006, it provided a detailed Good Faith Estimate of the costs to be incurred in the further search for, segregation and examination for responsiveness and exemptions of whatever other documents it may have in its custody. This estimate was responded to on January 30, 2007. In the response, the David Project did not agree to pay what was in the BRA estimate. Instead it did calculations of its own and offered to deposit $14,499.80 “with the Court, pending a determination by the Court of the actual and reasonable costs The David Project is required to pay to the BRA for these searches under G.L.c. 66, sec. 10.”
This Court, on the present record, is not equipped to sort out this cost issue. Further, given the ultimate comments that follows below, it seems premature to attempt to do so.

The David Project does not have a private right of action to bring suit against the BRA on the claim that the BRA does not compile, maintain and preserve records in accord with the Public Records Act.

The David Project does not disagree with this contention. Rather, it asserts that it is not making such a claim.

The documents sought are the subject of active litigation, and the request has been brought for the purpose of intimidation and harassment.

In making these contentions, the BRA is relying on 950 CMR sec. 32.08(2). That regulation deals with appeals to the Supervisor of Records. Among other things, it permits the Supervisor to “decline to accept an appeal from a requester where the public records in question are the subjects of disputes in active litigation . . .” Further, the Supervisor may “decline to accept an appeal from a requester if, in the opinion of the Supervisor, the request is designed to harass, intimidate or assist in the commission of a crime.”
This section of the regulations applies to the Supervisor, not to the Court. “ "The administrative remedy [of application to the Supervisor] provided by this section [does not] in any way limit the availability of judicial remedies’ (sec. 10(b)) . . .” Reinstein v. Police Commissioner of Boston, 378 Mass. 281, 287 n.13 (1979).
This Court does not believe it is in any way constrained by the actions of the Supervisor on the factual situation before it. It, therefore, declines to follow, blindly, the Supervisor’s actions. Rather, the Court has considered the situation and finds insufficient support for either the litigation exception or the claimed harassment or intimidation designation.
As a reading of this memorandum must reveal, it cannot be said that there are no issues of genuine material fact, and that either moving party is entitled to judgment as a matter of law. At the same time, there are some things that seem relatively clear, and some things that can be clarified in a sensible way to assist in resolving the present impasse.
1. The BRA is already holding some public records that it has yet to turn over to the requester. The Court urges the prompt turnover of those records on payment of proper copying charges. On a failure to do, the Court will entertain a separate motion for a specific order.
2. Much of what remains is entangled in the problems presented by the original request, as drafted. The Court, therefore, further urges the requester to consider redrafting a much leaner, more directly focused and reasonable request that either properly may be responded to or that may produce a revised good faith estimate of the costs involved in collecting, examining and producing whatever may be requested.

ORDER

For the foregoing reasons, the Boston Redevelopment Authority’s Motion for Summary Judgment, Paper #15, and The David Project’s Motion for Partial Summary Judgment, Paper #23, are each DENIED, without prejudice.

On February 16, 2007, Judge Hamlin allowed the defendants’ motion for judgment on the pleadings and denied the plaintiffs motion for partial judgment on the pleadings in *366 Policastro [22 Mass. L. Rptr. 282]. Policastro had alleged that the BRA’s sale of the land in issue to ISB for a value of $401,187.50 in the form of cash, a credit and public benefits, was substantially below market value, constituting an illegal and unconstitutional subsidy of a specific Islamic sect.

This statement is not to say that the BRA has essentially stiffed the David Project and produced nothing. It has already produced more than ample records relating to the sale of the property in question to the ISB. Recall that the David Project, in paragraph 4 of its complaint, explained that its “public records request involves the BRA’s transfer of publicly-owned land to the ISB for construction of a mosques and cultural center (the ‘BRA-ISB Project’). Although the BRA had valued the land at $2,010,966, the BRA sold the property to the ISB for only $175,000, plus an agreement by the ISB to provide Roxbury Community College with fundraising, books on Islam and an Islamic lecture series.” What has been produced by the BRA responds thoroughly to that subject.